922 F.2d 666
 18 Fed.R.Serv.3d 1476, RICO Bus.Disp.Guide 7672
 Howard GLICKSTEIN, as de facto Personal Representative of
the Estate of Lilly Glickstein and individually,
Evelyn Klimpl and Helaine Newman,
Plaintiffs-Appellants,
v.
SUN BANK/MIAMI, N.A., f/k/a Flagship First National Bank of
Miami Beach, a branch of Flagship National Bank of
Miami, Lucille Clum, and Lewis R. Elias,
M.D., Defendants-Appellees.
 No. 89-5458.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 28, 1991.
 
 Karen Coolman Amlong, William R. Amlong, Fort Lauderdale, Fla., for plaintiffs-appellants.
 Howard Setlin, Therrel, Baisden & Meyer Weiss, Miami, Fla., for defendants-appellees.
 Robert H. Schwartz, Fort Lauderdale, Fla., for Lewis Elias.
 Diane Wagner Katzen, Miami, Fla., for Grayson and Bonomo.
 Appeal from the United States District Court for the Southern District of Florida.
 Before JOHNSON and CLARK, Circuit Judges, and BROWN*, Senior District Judge.
 CLARK, Circuit Judge:
 
 
 1
 Howard Glickstein, on behalf of himself and the estate of Lilly Glickstein,[1] Evelyn Klimpl, and Helaine Newman, filed the instant action on November 23, 1988 against Sun Bank/Miami, N.A., Lucille Clum, Robert Grayson, Peggy Bonomo, and Dr. Lewis R. Elias alleging that the defendants conspired to "plunder" the assets of Lilly Glickstein and cheat the plaintiffs out of their inheritance. The complaint sought relief based on several state causes of action[2] and the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1964(c). The jurisdictional allegation in the complaint alleged that the district court had jurisdiction of the RICO claim based on 28 U.S.C. Sec. 1331 and 18 U.S.C. Sec. 1964(c). Jurisdiction for the state claims was based on the court's pendant jurisdiction and diversity of citizenship, 28 U.S.C. Sec. 1332(a)(1), as the plaintiffs are all residents of New York and the defendants are residents of Florida, California, and Virginia.[3]
 
 
 2
 After the complaint was filed, the defendants moved for dismissal. Several defendants argued that the claims alleged in the complaint were claims of the estate which must be brought by the actual personal representative. As Glickstein was not the actual personal representative, they argued that he lacked "standing" to bring the suit on behalf of the estate. Other defendants argued that the complaint should be dismissed because the plaintiffs had not yet "exhausted" probate remedies. The district court granted both of these motions and dismissed the complaint with prejudice. The plaintiffs appeal the dismissal, and we now reverse.
 
 I. FACTS AND PRIOR PROCEEDINGS
 
 3
 The three living plaintiffs in this case are siblings. Defendants Bonomo and Grayson are also siblings and the cousins of the plaintiffs. The five cousins are the nieces and nephews of the late Lilly Glickstein. Defendant Sun Bank is the successor to Flagship First National Bank of Miami Beach. Flagship was appointed the trustee of a marital trust established by Edward Glickstein, Lilly Glickstein's late husband, after the original trustee died.[4] The bank administered the trust and was initially appointed the personal representative of the estate. Defendant Lucille Clum was the trust officer at Sun Bank who dealt directly with Lilly Glickstein in the course of administering the trust. Defendant Elias was the physician who treated Lilly Glickstein after she was referred to him by Clum.
 
 
 4
 After Lilly Glickstein died, her third will, which was executed on February 24, 1978, was admitted to probate. Under the terms of this will and an amended trust agreement, defendants Grayson and Bonomo were to inherit equal shares of the remainder of Lilly Glickstein's estate. In addition, the two defendants were to be appointed beneficiaries of the marital trust. A second will and testament, executed on December 13, 1977, contained essentially the same terms. Lilly Glickstein's first will, however, was substantially less generous to Grayson and Bonomo. Under the terms of the first will executed on January 9, 1975, Herbert Gladstone and Martha Hogarth were appointed the beneficiaries of the marital trust.[5] In addition, the first will provided that Grayson and Bonomo each would receive one quarter of the residual estate while the remaining half of the residual estate was to be distributed equally between the plaintiffs.
 
 
 5
 After the third will was admitted to probate, Sun Bank was appointed as the personal representative of the estate. Plaintiffs Howard Glickstein and Helaine Newman along with Hogarth and Gladstone challenged the validity of the third will. On October 9, 1987, a Florida probate court set aside both the second and third wills along with the related trusts and codicils. The court rejected these wills after finding that defendant Grayson exercised undue influence on Lilly Glickstein. The court found that Glickstein suffered from advanced organic brain syndrome and Alzheimer's disease at the time the second and third wills were executed. The court concluded that Lilly Glickstein's illness reduced her mental capacity and made her susceptible to the "undue influence" of Grayson. The court ordered the 1975 will to be offered to probate as soon as all formalities were completed. This decision was affirmed on appeal, Sun Bank/Miami, N.A. v. Hogarth, 536 So.2d 263 (Fla.Dist.Ct.App.1988), and became final on June 8, 1989, when the Florida Supreme Court denied review, Sun Bank/Miami, N.A. v. Hogarth, 545 So.2d 1369 (Fla.1989).
 
 
 6
 During the proceedings in the state probate court over the validity of the wills, the bank represented the estate pursuant to the letters of administration issued on December 5, 1984 that appointed the bank the personal representative. After the probate court set aside the second and third wills, the court appointed the bank the estate's "curator" pending appeal of the decision. After the prior proceedings became final, the probate court admitted the first will into probate and appointed Glickstein as personal representative.
 
 
 7
 Glickstein filed the instant action after the probate court set aside the second and third wills. At the time the defendants filed their motions to dismiss the case, the appeal of the probate court's decision had not become final. After the federal district court granted the motion to dismiss this action, the Florida Supreme Court denied review of the decision of the district court of appeals affirming the probate court's judgment. After the plaintiffs filed the instant appeal, the probate court entered its order admitting the first will into probate and appointing Glickstein personal representative.
 
 
 8
 The plaintiffs have also brought a state court action against these same defendants apparently alleging similar claims. This action, however, has not been actively litigated and was apparently brought to ensure that the statute of limitations would not bar the action in state court if the federal courts refused to hear the claim.
 
 II. DISCUSSION
 
 9
 A. Howard Glickstein's Ability to Represent the Estate
 
 
 10
 The district court dismissed the case after holding that Howard Glickstein did not have standing to represent the estate as he was not the estate's personal representative. Alternatively, the court held that Florida law requires an administrator ad litem to be appointed to bring this action on behalf of the estate.[6] After reviewing these issues we determine that the district court erred in dismissing the complaint on these grounds.
 
 
 11
 We first turn to standing. It is clear that the Lilly Glickstein estate has "standing" to bring this action. The traditional requirement that the plaintiff show an injury in fact that is fairly traceable to the conduct of the defendant[7] is met by the allegation in the complaint that the defendants' actions resulted in the diminishment of the assets of the estate. The standing doctrine, which "has been very much tied to litigation asserting the illegality of governmental action," is of limited applicability in cases between private parties. See 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3531, at 340-41 (2d ed. 1984). As Wright and Miller explain, "[c]laims of private wrongdoing ordinarily are asserted by persons obviously having the enforceable interest, if anyone has; such problems as arise commonly are handled in terms of defining private causes of action or of identifying the real party in interest." Id. at 341.
 
 
 12
 The question in this case is whether Howard Glickstein is able to bring this case on behalf of the estate. This is not a question of standing; rather, this issue involves the question of whether Glickstein has the capacity to bring this action on behalf of the estate. As Wright & Miller note, the doctrine of capacity is often incorrectly considered under the rubric of a standing claim. Id. at 342.
 
 
 13
 The capacity doctrine relates to the issue of "a party's personal right to litigate in a federal court." 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1542, at 327 (2d ed. 1990). In civil cases brought in federal court, Federal Rule of Civil Procedure 17(b) governs the capacity question. That rule provides:
 
 
 14
 The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held....
 
 
 15
 Fed.R.Civ.P. 17(b). As Glickstein is seeking to represent the estate, the third sentence of Rule 17(b) requires us to look to the law of the state in which the district court is sitting to determine Glickstein's capacity. Therefore, we now turn to a review of Florida law.
 
 
 16
 Florida law provides that the personal representative has the capacity to bring actions on behalf of the estate. Fla.Stat. Sec. 733.601. Judge Newbold's order of July 29, 1989 appointing Glickstein personal representative clearly gives him capacity to currently bring this action.
 
 
 17
 Glickstein, however, was not the personal representative at the time the suit was brought. Nevertheless, as his pleadings and responses make abundantly clear, his appointment would be assured once the judgment of the probate court overturning the second and third wills became final.[8] Under these circumstances, the district court erred in dismissing the case with prejudice.
 
 
 18
 Given the lack of finality surrounding the case, the better course of action would have been to stay the proceedings to await the state court action. As the defendants admit, the dismissal in this case was only possible because the estate was an indispensable party that could not be joined. Federal Rule of Civil Procedure 19(b) directs the court to apply principles of "equity and good conscience" to determine whether the action should proceed absent the indispensable party. In this case, while the ability of the estate to be joined as a party was uncertain, it was likely to be determined in the near future. Under these circumstances, dismissal on Rule 19(b) grounds was not "equitable" and therefore, inappropriate.
 
 
 19
 Had the district court withheld action on the motion until after the final ruling from the state courts, the plaintiffs merely would have had to amend the complaint to substitute Glickstein as actual personal representative for Glickstein as de facto personal representative. Such an amendment would, under the principles of Rule 15(c), relate back to the filing of the complaint. See Crowder v. Gordons Transports, Inc., 387 F.2d 413, 416 (8th Cir.1967) (amendment by mother of minor children substituting herself as mother and next friend of children for herself as administratrix of estate of late husband related back to filing of complaint under Rule 15(c)); see also Fed.R.Civ.P. 15(c) advisory committee note to 1966 amendment (while rule does not explicitly address substitution of plaintiffs, same principles as substitution of defendants apply).[9] In this case, since the defendants had notice that the estate was attempting to assert claims against them, they cannot show prejudice. In addition, the defendants knew that the estate was the proper party because they moved to dismiss on the grounds that the estate was not represented. On remand the plaintiffs should be allowed to amend their complaint to reflect the change in capacity.[10]
 
 
 20
 As noted above, the district court also dismissed the complaint after holding that the plaintiffs should have had an administrator ad litem appointed. Under Florida law, such an appointment is appropriate when (1) there is no personal representative or (2) the interests of the estate are adverse to the interests of the plaintiff's action. Fla.Stat. Sec. 733.308. While the parties dispute the applicability of the first ground,[11] had the court awaited final resolution of the state appeals, the application of this provision would have been made much simpler, as Glickstein either would or would not have been appointed personal representative. As Glickstein is now the personal representative, the amendment of the complaint noted above will cure any capacity defect. The defendants also argue that the plaintiffs' claims are adverse to the claims of the estate. The plaintiffs' claims, if successful, will increase the value of the estate. We are unable to see how this action presents a conflict with the interests of the estate. While the claims are adverse to the interests of Sun Bank, the prior personal representative, Sun Bank is no longer the personal representative. In any event, the fact that Sun Bank's interests could be adversely affected by the claim does not establish that the claims are adverse to the interests of the estate.
 
 B. Jurisdiction, Exhaustion, and Abstention
 
 21
 As an alternative ground, the district court dismissed the action on the basis that the plaintiffs had failed to "exhaust" their probate remedies. On appeal the appellees raise this issue and the additional issues of whether the "probate exception" to diversity jurisdiction or the abstention doctrine are applicable in this case. We begin by reviewing the probate exception.[12]
 
 
 22
 While 28 U.S.C. Sec. 1332(a)(1) vests the district courts with jurisdiction of state based claims when residents of one state bring an action against residents of another state, the Supreme Court has created a limited exception when the claim affects probate proceedings. This doctrine, known as the "probate exception," does not bar all diversity actions[13] dealing with wills and estates. As the Court noted:
 
 
 23
 [F]ederal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.
 
 
 24
 Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946) (emphasis added) (quoting Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43, 30 S.Ct. 10, 12, 54 L.Ed. 80 (1909)).
 
 
 25
 This circuit has narrowly construed the probate exception. In Michigan Tech Fund v. Century Nat'l Bank, 680 F.2d 736 (11th Cir.1982), the court permitted the district court to entertain an action against the decedent's estate that sought a declaration that the decedent's will conveyed certain of the decedent's assets to the plaintiffs. The fact that resolution of the claims against the estate required the federal district court to interpret the will was insufficient to divest the court of diversity jurisdiction over the claim. Id. at 740. The court also allowed the plaintiffs to assert a claim against the estate for breach of a promise to make a will. Id. The Michigan Tech court allowed the defendants to maintain these claims against the estate in spite of the pending probate proceedings. Id. at 738.
 
 
 26
 It is evident that the probate exception is inapplicable to this case. In Michigan Tech we allowed a suit against the estate that required a construction of the will. In this case, the will does not need to be interpreted, and the claim is being made by nonresident beneficiaries of the estate. We also note that the validity of the wills has been finally resolved by the state courts. Finally, the assets at issue in this case are in the control of the defendants rather than the probate court. The purposes of the probate exception would not be served by declining jurisdiction over this case.
 
 
 27
 We now turn to the defendants' claim that the dismissal of this case was proper because the plaintiffs have failed to "exhaust" probate remedies. The district court accepted this argument and dismissed the case after noting that the plaintiffs had failed to "demonstrate" that the case could not be heard by the probate courts, citing DeWitt v. Duce, 408 So.2d 216, 218 (Fla.1981). The defendants argue that DeWitt stands for the proposition that when the plaintiffs had a fair opportunity to litigate a claim for tortious interference with an inheritance in state probate court but did not do so, they would be precluded from doing so in a later federal action. After examining this case, we find that the defendants' reliance on it is misplaced.
 
 
 28
 In DeWitt, the deceased originally executed a will leaving the majority of his assets to the plaintiffs. Subsequently, the deceased executed a second will in which he revoked the first will and made substantial bequests to the defendants and the plaintiffs. While the plaintiffs initially challenged the second will before the probate court, they later dismissed their challenge and accepted the inheritance provided in the second will. Over two years later they instituted an action in federal district court for wrongful interference with an inheritance, arguing that the defendants exercised undue influence over the deceased that caused him to revoke the first will and replace it with the second. After the district court dismissed the case as a collateral challenge to the will, this court certified the following question to the Florida Supreme Court:
 
 
 29
 Does Florida law, statutory or otherwise, preclude plaintiffs from proving the essential elements of their claim for tortious interference with an inheritance where the alleged wrongfully procured will has been probated in a Florida court and plaintiffs had notice of the probate proceeding and an opportunity to contest the validity of the will therein but chose not to do so?
 
 
 30
 DeWitt v. Duce, 642 F.2d 159, 160 (5th Cir.1981).
 
 
 31
 The state court answered the question in the affirmative, holding that the plaintiffs' challenge was "an impermissible collateral attack on the probate proceedings." DeWitt, 408 So.2d at 218. A review of the opinion reveals that, rather than being based on grounds of exhaustion, the opinion is an application of collateral estoppel principles to prior probate proceedings.
 
 
 32
 The DeWitt court also noted several limitations to its holding that a tortious interference with an inheritance claim is a collateral attack. First, the court explicitly approved of the holding of the court in Peffer v. Bennett, 523 F.2d 1323 (10th Cir.1975). The Florida Supreme Court gave the following interpretation of Peffer:
 
 
 33
 [The Peffer] court found that collateral estoppel did not apply to a later tort action brought for attorney's fees and expenses, because the earlier probate proceeding which had established undue influence did not necessarily establish intent for purposes of the interference action. But in Peffer the plaintiff had exhausted her probate remedy, and her later action was allowable only to recover damages for which probate could not have provided.
 
 
 34
 DeWitt, 408 So.2d at 220. In addition the DeWitt court noted:
 
 
 35
 If defendant's tortious conduct had caused the testator to make an inter vivos conveyance to defendant of assets that would otherwise have been part of the estate, setting aside the will would be inappropriate redress and consequently a tort action is properly allowed. See Hegarty v. Hegarty, 52 F.Supp. 296 (D.Mass.1943); Cyr v. Cote, 396 A.2d 1013 (Me.1979).
 
 
 36
 408 So.2d at 219 (footnote omitted).
 
 
 37
 As the plaintiffs point out, these qualifications are both applicable here. As in Peffer the plaintiffs seek attorney's fees and expenses for their actions in challenging the first will. In addition, the plaintiffs seek to overturn certain inter vivos transfers made to the defendants. The defendants' exhaustion argument is apparently based upon the principle that wrongful interference claims are only available when probate remedies are inadequate. See DeWitt, 408 So.2d at 219 n. 8. If, as the defendants argue, the ancillary jurisdiction of the probate court extends to these claims, the tort action would not exist. In DeWitt, however, the Florida Supreme Court contemplated that these actions were appropriate for resolution in collateral proceedings. In addition, as the defendants note, this matter is currently pending in a civil suit before a Florida state court. This suit's existence before a Florida court of general jurisdiction supports the plaintiffs' contention that these matters are properly brought in a collateral proceeding. See also Watts v. Haun, 393 So.2d 54 (Fla.Dist.Ct.App.1981) (in personam action asserting that defendants interfered with inter gift states a cause of action for tortious interference), cited with approval in DeWitt, 408 So.2d at 219. As Florida courts of general jurisdiction regularly determine these claims, see Watts, 393 So.2d at 56 (citing cases), we conclude that the plaintiffs are not required to bring the state claims before the probate court.
 
 
 38
 The proposition that state "exhaustion" rules could bar the federal RICO claims is not one that requires much discussion. While Florida courts do have concurrent jurisdiction over RICO claims, see Tafflin v. Levitt, --- U.S. ----, 110 S.Ct. 792, 795-99, 107 L.Ed.2d 887 (1990), the state does not have the power to impose a substantive exhaustion requirement on a federal claim. See Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). We find the reasoning of the court in Gunther v. Dinger, 547 F.Supp. 25 (S.D.N.Y.1982), appropriate. In that case, the decedent's daughter brought a RICO action against several defendants alleging they had converted estate assets into personal assets. The court held that the defendants' contention that the plaintiff must exhaust state remedies before bringing a RICO claim "is frivolous on its face." Id. at 27.
 
 
 39
 Finally, the defendants argue that abstention is appropriate in this case as the issues are pending in the state courts and the state courts are more familiar with them. The fact that a similar action is pending in a state court does not mean that the federal court should abstain from deciding the case. See Jett v. Zink, 474 F.2d 149 (5th Cir.) (even if state law is unclear, it is clear that both cases can be heard simultaneously in state and federal court), cert. denied, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 104 (1973). The defendants note that it is proper for the federal court to decline jurisdiction when the state courts are already familiar with the matters. See Rice v. Rice Found., 610 F.2d 471 (7th Cir.1979). While the probate court that invalidated the first will is more familiar with the facts of this case than the district court, these issues are not pending before the probate court.[14]
 
 
 40
 In conclusion, we emphasize that the plaintiffs are New York residents suing some defendants who are Florida residents. The diversity statute gives them the right to avoid Florida courts and to choose to bring their state claims in federal court. Additionally, the plaintiffs present claims that are based on the federal RICO statute. As the court in Gunther noted:
 
 
 41
 [D]efendants contend that this action should be dismissed or stayed pending the completion of the state probate proceedings where plaintiff has made many of the same allegations set forth in her complaint in this action. Apparently plaintiff has raised these charges before the Surrogate's Court in connection with an application to replace the estate fiduciaries. No sound reason appears why the resolution of that application should supplant or precede the prosecution of the independent claims advanced by plaintiff in this lawsuit.
 
 
 42
 547 F.Supp. at 27. When concurrent jurisdiction exists, plaintiffs' choices between state and federal forums usually control. As the defendants have not presented this court with credible reasons why we should upset the choice made by these plaintiffs, we decline to do so.
 
 
 43
 The judgment of the district court is REVERSED. This case is remanded for further proceedings in light of this opinion.
 
 
 
 *
 Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas sitting by designation
 
 
 [1]
 Glickstein alleged that because he was the "de facto personal representative" of the estate, he had the capacity to represent it
 
 
 [2]
 The plaintiffs' amended complaint had eight counts. In it they alleged that the defendants (1) engaged in a pattern of racketeering activity in violation of RICO; (2) were guilty of civil theft; (3) had breached fiduciary duties owed to Lilly Glickstein; (4) had converted assets belonging to Lilly Glickstein; (5) had tortiously interfered with their inheritance; (6) had conspired to tortiously interfere with their inheritance; and (7) were negligent. Count eight of the complaint sought declaratory and injunctive relief
 
 
 [3]
 This suit was filed on November 28, 1988. At that time, federal diversity jurisdiction in estate cases was determined by looking to the domicile of the representative of the estate. Effective May 18, 1989, Congress added a requirement that federal courts look to the domicile of the decedent to determine diversity jurisdiction. 28 U.S.C. Sec. 1332(c)(2). At the time of filing, Glickstein had not yet been appointed the personal representative of the estate. This appointment did not take place until July 29, 1989, after the effective date of the rule change. We hold that Glickstein's appointment as representative should be related back to the time at which the suit was filed. As discussed below, Glickstein was practically assured of being appointed representative of the estate at the time the suit was filed. Cf. Longbottom v. Swaby, 397 F.2d 45, 48 (5th Cir.1968) ("Change in description of the capacity of the plaintiff after the [statute of] limitation period has expired has been allowed in a variety of situations." (citations omitted))
 In addition, the district court had diversity jurisdiction on the basis of Glickstein's, Klimpl's, and Newman's individual claims against the defendants' tortious interference with their inheritance right.
 
 
 [4]
 Hereinafter, the bank will be referred to as Sun Bank or the bank without distinguishing between actions taken by Sun and Flagship
 
 
 [5]
 While Hogarth and Gladstone were parties to the state court probate proceedings, they are not parties to this action
 
 
 [6]
 The court found that someone must have "standing" to bring the claim on behalf of the estate after finding that the estate is an "indispensable party" to the action. R3-40 at 4 (citing Fed.R.Civ.P. 19). The parties have not challenged this ruling and we proceed assuming (without deciding) that it is correct
 
 
 [7]
 See Allen v. Wright, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)
 
 
 [8]
 The first will which was admitted to probate prior to this action being filed named Glickstein as personal representative. His appointment was not made until the appeal was complete
 
 
 [9]
 The parties have argued as to whether Glickstein's subsequent appointment as personal representative operates to allow him to continue to maintain the action under the terms of Fla.Stat. Sec. 733.601. That section provides:
 The duties and powers of a personal representative commence upon his appointment. The powers of a personal representative relate back in time to give acts by the person appointed, occurring before the appointment and beneficial to the estate, the same effect as those occurring thereafter. Before issuance of letters, a person named executor in a will may carry out written instructions of the decedent relating to his body and funeral and burial arrangements. A personal representative may ratify and accept acts on behalf of the estate done by others when the actions would have been proper for a personal representative.
 Id. While Rule 17(b) directs the court to apply state law to determine capacity, it is not clear from the terms of the Rule whether state relation back doctrines should also be followed. In Crowder, the court, applying Erie principles, reversed the district court's application of state "relation back" principles and held that the specific provisions of Rule 15(c) governed this federal procedural question. 387 F.2d at 416. We adopt this reasoning.
 
 
 [10]
 The plaintiffs have moved for this court to substitute Glickstein as personal representative for Glickstein as de facto personal representative. While Federal Rule of Appellate Procedure 43(b) does allow "substitution for reasons other than death," the rule is based on Fed.R.Civ.P. 25, which has been interpreted to apply only when the case originally had the correct parties. 3B J. Moore & J. Kennedy, Moore's Federal Practice p 25.02 (1990). A motion directed to the district court to amend the pleadings should be used when all of the proper parties are not present. Id. at p 15.11
 
 
 [11]
 The dispute centers on Sun Bank's status after the probate court appointed it as "curator."
 
 
 [12]
 While this argument was not raised below, as it relates to the jurisdiction of a federal court to hear these claims, we will consider it for the first time on appeal. McLearn v. Cowen & Co., 660 F.2d 845, 849 (2d Cir.1981) (jurisdictional arguments not waived by appellant's failure to present argument to district court)
 
 
 [13]
 We note that the probate exception is an exception to diversity jurisdiction and has no application to the federal RICO claims
 
 
 [14]
 At oral argument the defendants argued that Tafflin mandated that we affirm the district court on abstention grounds. In Tafflin the Supreme Court affirmed the judgment of the court of appeals requiring abstention from deciding a RICO action arising from the failure of several state chartered financial institutions. The court of appeals affirmed the district court's decision to abstain because of the state's regulation of these institutions. The court of appeals rejected the plaintiffs' argument that abstention was inappropriate because concurrent jurisdiction did not exist over the RICO claim. The Supreme Court then granted certiorari to consider the jurisdictional issue only. 110 S.Ct. at 794. Thus, the Court did not consider the abstention issue. We find the court of appeals decision in this case distinguishable as it relied on Maryland's " 'comprehensive scheme for the rehabilitation and liquidation of insolvent state-chartered savings and loan associations.' " Tafflin v. Levitt, 865 F.2d 595, 600 (4th Cir.1989) (citation omitted). Florida has no similar "comprehensive scheme" relating to probate matters