**Alexander KAPLAN, Plaintiff,**

v.

**Leon KAPLAN, Defendant.**

**Case No. 2:10–cv–237–UA–SPC.**

United States District Court,
M.D. Florida,
Fort Myers Division.

Oct. 30, 2012.

Order Denying Reconsideration
Nov. 20, 2012.

Alexander Lloyd Kaplan, Alexander L. Kaplan, PA, Naples, FL, pro se.

Cathy S. Reiman, Roetzel & Andress, LPA, Christopher Dale Donovan, Roetzel & Andress, LPA, Naples, FL, for Defendant.

## ORDER

STEVEN D. MERRYDAY, District Judge.

Mack Kaplan died testate on July 28, 2006, and probate began a month later in *In re Estate of Mack Kaplan,* No. 06–843–CP–02–LDM (Fla. 20th Cir. Ct. filed Aug. 28, 2006). After considering competing petitions from Leon, who is Mack's brother, and Alexander, who is Mack's son, the probate court appointed Leon as personal representative. Extensive and contentious litigation ensued;[1] the probate remains open (and remains contentious).

In this action, Alexander sues (Doc. 43) Leon for breach of fiduciary duty, for "negligent retention of counsel," and for a violation of Florida's "Prudent Investor Rule." Each wrong alleged by Alexander occurred during Leon's administration of Mack's estate. Leon moves (Doc. 122) for summary judgment.

## BACKGROUND

Alexander began this action in the Fort Myers Division of the Middle District of

---

1. Alexander released an avalanche of litigation in the Circuit Court for Collier County. *Kaplan v. Kaplan,* No. 07–01520–CA (Fla. 20th Cir. filed May 16, 2007); *Kaplan v. Kaplan,* No. 07–00813–CA (Fla. 20th Cir. Ct. Mar. 20, 2007); *Kaplan v. Encore Senior Living,* No. 07–00613–CA (Fla. 20th Cir. Ct. filed Mar. 5, 2007); *Kaplan v. Kaplan,* No. 07–00220–CA (Fla. 20th Cir. Ct. filed Jan. 25, 2007); *see also Kaplan v. Kaplan,* No. 06–00162–CA (Fla. 20th Cir. Ct. filed Jan. 31, 2006); *In re Mack Kaplan,* 05–0054–GA (Fla. 20th Cir. Ct. filed May 25, 2005).

The tumultuous slide continued into both the Second District Court of Appeal and the Supreme Court of Florida. *Kaplan v. Kaplan,* 20 So.3d 854 (Fla. 2d DCA 2009); *Kaplan v. Estate of Kaplan,* 15 So.3d 587 (Fla. 2d DCA 2009), *rev. dismissed,* 19 So.3d 311 (Fla. 2009); *Kaplan v. Kaplan,* 983 So.2d 588 (Fla. 2d DCA 2008); *Kaplan v. Kaplan,* 963 So.2d 711 (Fla. 2d DCA 2007); *Kaplan v. Kaplan,* 968 So.2d 1025 (Fla. 2d DCA 2007); *Kaplan v. Kaplan,* 963 So.2d 711 (Fla. 2d DCA 2007); *Kaplan v. Kaplan,* 991 So.2d 865 (Fla. 2d DCA 2008).

Florida on April 21, 2010. In a November 22, 2010, motion to dismiss (Doc. 46), Leon argued (1) that *res judicata* bars the majority of this action, (2) that no diversity of citizenship exists, (3) that the "probate exception" bars federal jurisdiction, and (4) that the district court should abstain. An August 3, 2011, order (Doc. 56) (entered by the predecessor judge, Judge Honeywell) (1) relies on *Evans v. Tucker*, 101 Fla. 688, 135 So. 305, 309 (1931), and rejects the *res judicata* argument; (2) compares *Huguenor v. Huguenor*, 420 So.2d 344 (Fla. 5th DCA 1982), and dispels the personal jurisdiction argument; (3) cites *Marshall v. Marshall*, 547 U.S. 293, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006), and denies the "probate exception" argument; and (4) reviews *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and discards the abstention argument. The August 3rd order denies the motion to dismiss.

On August 18, 2011, Alexander moved (Doc. 59) to strike Leon's affirmative defenses of *res judicata*, lack of personal jurisdiction, and lack of subject matter jurisdiction. In response, Leon argued (Doc. 60) that the August 3 order misreads *Evans* (Leon argued that "[the court's] quoted language from *Evans* is [ ] from [a] description of Florida's common law [before] 1927") and misapplies *Huguenor* (Leon argued that *Huguenor* is "a Florida personal jurisdiction case . . . ha[ving] nothing to [do] with diversity jurisdiction"). On the one hand, Leon asked for reconsideration of the August 3 order and, on the other hand, Leon asserted that a denial of a motion to dismiss "is not 'law of the case.'" Relying primarily on Judge

Honeywell's August 3 order, an August 29, 2011 order, 2011 WL 3841552 (entered by Magistrate Judge Chappell) (Doc. 62) strikes the affirmative defenses of *res judicata*, lack of personal jurisdiction, and lack of subject matter jurisdiction. On December 21, 2011, Chief Judge Anne C. Conway issued a standing order (No. 2:11–mc–30–FtM–22) that transferred this action from Judge Honeywell to the Fort Myers "unassigned" docket. On August 22, 2012, this action was transferred to me.

In the motion for summary judgment, Leon again asks for reconsideration of the August 3 denial of the motion to dismiss. Although Leon asks for reconsideration of *res judicata* only, a review of *res judicata*, an examination of the motion for summary judgment (Doc. 122), and the reconsideration of Alexander's motion to compel (Doc. 126) require a reconsideration of abstention. Accordingly, an October 11, 2012, order (Doc. 181) directs Alexander to show cause why this action should not be stayed under *Colorado River* until the conclusion of Mack's probate. Alexander responds (Doc. 182).

## DISCUSSION

■ Competing federal and state litigations similar to the competing litigations involving Mack Kaplan's estate appear rarely because the "probate exception" typically bars federal jurisdiction.[2] *See, e.g., Mangieri v. Mangieri*, 226 F.3d 1, 2–3 (1st Cir.2000) (applying the probate exception because the plaintiff demanded in federal court an intestate share of the estate). *Markham v. Allen*, 326 U.S. 490, 494, 66

---

**2.** Because Leon is a citizen of Arizona, because Alexander is a citizen of Florida, and because the amount in controversy exceeds $75,000, subject matter jurisdiction is invoked under 28 U.S.C. § 1332. *Palmer v. Hosp. Auth. of Randolph*, 22 F.3d 1559, 1562 n. 1

(11th Cir.1994) (noting that a personal representative suing on behalf of an estate assumes the citizenship of the deceased, 28 U.S.C. § 1332(c)(2), but, if suing in a personal capacity, retains the citizenship of the personal representative's state).

S.Ct. 296, 90 L.Ed. 256 (1946), defines the "probate exception":

> [W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, ... it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

*Marshall v. Marshall,* 547 U.S. 293, 311–12, 126 S.Ct. 1735 (2006), defines "interfere":

> [W]e comprehend the "interference" language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same *res.* Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

(citations omitted). Seeking in the federal action to compel a disposition of neither the will, the estate, nor the *res* in the custody of the probate court, Alexander demands only a money judgment against Leon personally. *Marshall,* 547 U.S. at 311, 126 S.Ct. 1735; *Lefkowitz v. Bank of N.Y.,* 528 F.3d 102, 106 (2d Cir.2007) ("[W]here exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction."); *Jones v. Brennan,* 465 F.3d 304, 307–08 (7th Cir. 2006) (Posner, J.) (noting that a breach of fiduciary duty claim accusing the guardians of mismanaging an estate "does not ask the court ... to administer the estate"). *Marshall's* narrow definition of "interference" permits Alexander's federal pursuit of Leon despite the protection intended by the "probate exception."

■ However, Alexander's federal pursuit of Leon presents a demonstrably "exceptional" circumstance that compels a stay under *Colorado River* until the resolution of Mack's probate. *See Ambrosia Coal & Const. v. Morales,* 368 F.3d 1320, 1328 (11th Cir.2004) ("Federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.' A policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation. Thus, federal courts can abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances.") (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236). Considerations governing the grant of a stay include (1) whether federal or state law governs the action, (2) whether the federal court acquired jurisdiction first, (3) whether the state court can adequately protect the parties' rights, (4) whether simultaneous prosecution invites piecemeal litigation, (5) whether a court has assumed jurisdiction over property, (6) whether the federal forum is inconvenient. *Moses H. Cone Mem. Hosp. v. Mercury Constr.,* 460 U.S. 1, 19–27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Ambrosia Coal,* 368 F.3d at 1332. The factors are applied in "a pragmatic, flexible manner with a view to the realities of the case at hand," *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. 927, and "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to

exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. Four of the six factors strongly support abstention; the other two factors, the fifth and the sixth factors, are trivial in the circumstances.[3]

### 1. State Law Governs Each Claim in the Federal Action

■ In the federal action Alexander complains about an array of breaches of fiduciary duty allegedly committed by Leon while administering the estate, including (1) Leon's allegedly settling a wrongful death action "for a ridiculously low amount;" (2) Leon's allegedly failing to defend against claims from two attorneys; (3) Leon's allegedly submitting improper "bills for travel, hotel, food, etc.;" (4) Leon's allegedly billing "double" for guardianship costs; (5) Leon's allegedly abandoning Mack's "valuable personal property;" (6) Leon's allegedly failing to timely pay Mack's pharmacy bill; (7) Leon's allegedly failing to timely pay a funeral expense; (8) Leon's allegedly paying an attorney to defend an IRS audit instead of obtaining free representation from H & R Block; (9) Leon's allegedly failing to invest estate assets in accord with Florida's "Prudent Investor Rule;" and (10) Leon's allegedly failing to hire a competent attorney.

State law governs each claim asserted by Alexander against Leon in the federal action.[4]

### 2. The State Court Acquired Jurisdiction First

■ "[T]he order in which jurisdiction was taken is not a mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is the more advanced." *Elmendorf Grafica, Inc. v. D.S. America (East)*, 48 F.3d 46, 52 (1st Cir.1995). Certainly "more advanced," the probate administration was opened six years ago (four years before the federal action) and contains more than 1,020 docket entries, which include contests over a personal representative, over the settlements of claims, and over interim accountings. Both from the administration of probate and from Alexander's many associated lawsuits, the state court has acquired a brutally intimate familiarity with the dispute surrounding Leon's administration of Mack's estate. Interference from parallel federal litigation squanders the state court's accumulated investment.

### 3. The State Court Action Adequately Protects the Parties' Rights

Enjoying a singular expertise in Florida probate, the state trial and appellate

---

**3.** First, because in the federal action Alexander sues Leon in Leon's personal capacity, a judgment would encumber Leon's assets, not the estate's assets. Neither the federal nor the state court has "assumed jurisdiction" over Leon's assets. Second, the inconvenience "factor should focus primarily on the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal*, 368 F.3d at 1332. Other than Leon (who administers the estate from Arizona), the parties, attorneys, evidence, and witnesses are local. An action in federal court in Fort Myers is as geographically "convenient" as an action in state court in Fort Myers, but intimately insinuated actions that pend simultaneously in fed-

eral court and state court are worse than merely "inconvenient."

**4.** Under Section 733.609(1), Florida Statutes, a personal representative is liable to interested persons for damage or loss resulting from bad faith, self-dealing, conflicts of interest, and breach of fiduciary duty. *Sladek v. Lambertus*, 667 So.2d 417 (Fla. 4th DCA 1996); *State v. Lahurd*, 632 So.2d 1101 (Fla. 4th DCA 1994). However, Section 733.619(2) ensures a heightened standard of liability by limiting a lawsuit against a personal representative personally to torts "committed in the course of administration of the estate only if personally at fault."

courts are designed to resolve disputes, such as this one, in which a party alleges the occurrence of a tort during the administration of an estate. *See Lehman v. Lucom,* 78 So.3d 592 (Fla. 4th DCA 2011); *Gaines v. DeWitt,* 41 So.3d 951 (Fla. 2d DCA 2010); *Wilson v. Armstrong,* 686 So.2d 647 (Fla. 1st DCA 1996); *In re Estate of Gray,* 626 So.2d 971 (Fla. 1st DCA 1993); *Jones,* 465 F.3d at 307 ("[S]tate courts are assumed to have developed a proficiency in [probate] matters, to have procedures tailored to them, and to work closely with and even employ specialized staff not found in federal courts."); *Reichman v. Pittsburgh Nat'l Bank,* 465 F.2d 16, 18 (3d Cir.1972) (recognizing "the special ability of the state court" to decide issues involving "trusts and estates"); Wright & Kane, 20 *Federal Practice and Procedure* § 27 (2012) (recognizing "that [probate matters and domestic relations cases] are areas of the law in which the states have an especially strong interest and a well-developed competence"); Robert A. Sams, *Florida Personal Representative's Guide* §§ 14.4, 14.6 (1993) (supp. 2012).

The Florida Probate Code provides a plenary procedure to resolve before the closing of the probate administration each claim asserted by Alexander in the federal action. Rule 5.345, Florida Probate Rules, permits the personal representative to "file an interim accounting at any time" and grants the probate court authority to require an interim accounting. An "interested person," such as Alexander, may move under Rule 5.150 to require the personal representative "to file an accounting ... not otherwise required by statute or rule." Among other details, the accounting for each accounting period (1) must list each cash and property transaction, (2) must include a schedule of assets computed at the end of the accounting period, and (3) must show each gain or loss. An "inter-ested person," such as Alexander, may object to an accounting in writing under Rule 5.345(c) by stating "with particularity the item or items to which the objection is directed and the grounds upon which the objection is based." Additionally, even before the estate's closing, Rule 5.380 permits a beneficiary, such as Alexander, to petition for a compulsory distribution.

Rule 5.400 requires a personal representative "who has completed administration except for distribution [to] file a final accounting and a petition for discharge including a plan of distribution." The final accounting and petition for discharge must include (1) a statement that the personal representative has administered the estate, settled each claim, and paid each tax; (2) the amount of the personal representative's and the personal representative's attorneys' compensation and the method of determining the compensation; (3) a detailed plan of distribution; and (4) a statement requiring an interested party, such as Alexander, to object within thirty days. After receiving evidence "that the estate has been fully administered and properly distributed" and after overruling any objection, the probate court must discharge the personal representative under Section 733.901(1) and close the estate. An order discharging the personal representative is a final order subject to immediate appeal.

According to Section 733.901(2), the discharge "release[s] the personal representative and [ ] bar[s] any action against the personal representative, as such or individually." Because the "uncompromising fidelity of personal representatives" outweighs the concern that "the estates of decedents be finally determined with dispatch," Section 933.901(2) releases the personal representative from individual liability only if the personal representative discloses to the probate court the disposition of the disputed estate asset. *Van Dusen v. Southeast First Nat'l Bank of*

*Miami*, 478 So.2d 82, 91 (Fla. 3d DCA 1985) (applying Section 733.901(2)'s substantively identical predecessor, Section 733.901(5)). In other words, "the price of immunity is disclosure." *Van Dusen*, 478 So.2d at 91 ("If the personal representative has not disclosed its disposition of an asset of the estate, it is not entitled to the sanctuary provided by [Section 733.901(2) ].").

In sum, the state probate court can, should, and probably will resolve each claim raised by Alexander in the federal action. Before closing the probate administration, Leon is required to submit an accounting. If Leon discloses each allegedly improper expense (including those alleged in the federal action), Alexander and Leon must litigate in the probate court the propriety of those expenses. The probate court's resolution either inculpates Leon or absolves him through discharge. Thus, after the closing of probate, the federal action remains only in respect to a matter undisclosed by Leon, unknown to Alexander, and unadjudicated by the state probate judge.[5] A federal court's gratuitous and premature intrusion into a Florida court's administration of an estate slights the interests of comity and continues athwart the intent, design, and execution of the Florida Probate Code.

### 4. Simultaneous Prosecution Invites Piecemeal Litigation

The possibility of piecemeal litigation must pose a threat of waste that exceeds the threat posed by "the vast majority [of] federal cases with concurrent state counterparts." *Ambrosia Coal*, 368 F.3d at 1333.

> As for the concern about piecemeal litigation, [abstention] is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues. Rather, concerns about piecemeal litigation "should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate [forums]" and weigh in favor of [abstention] only if there is some "exceptional basis" for [staying] one action in favor of the other.

*KPS & Assoc. v. Designs By FMC*, 318 F.3d 1, 10–11 (1st Cir.2003) (internal quotations omitted). Additionally, " 'the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation.' " *Ambrosia Coal*, 368 F.3d at 1331 (quoting *Moses H. Cone*, 460 U.S. at 17 n. 20, 103 S.Ct. 927).

Continued prosecution of this action invites piecemeal litigation and assorted other vexing mischief, both foreseeable and unforeseeable, both in the federal action and in the state probate administration. Alexander provides a compelling and illus-

---

**5.** Alexander argues that abstention results in prejudice because (1) "there is no closure expected of the estate in the foreseeable future," (2) Leon "is 'elderly and in poor health,' " and (3) "[t]o suggest that [Leon] will be around several years down the road in better condition than he is presently in would be foolish at best." As explained above, several prompt remedies await Alexander in the probate. Additionally, Alexander's federal action survives Leon's death. Fla. Stat. § 46.021; *Cameron v. Mittuch*, 113 So.2d

389, 390 (Fla. 3d DCA 1959) ("It has been established in this jurisdiction that a cause of action for a tort survives the death of the tortfeasor and may be maintained against his personal representative."). That Alexander might fail to prove his allegations in the probate court presents no justification for forum shopping, no justification to continue prosecution of a parallel federal action, and no justification to pervert principles of state and federal comity to aid Alexander in his haste to defeat Leon before Leon dies.

trative example. An August 17, 2012, order (Doc. 155) in this action reads in full:

> Alexander Kaplan moves (Doc. 140) to compel the production of legal invoices and legal bills. An August 28, 2010, order (Doc. 24) issued by [federal] Judge Honeywell states, "Each party shall timely serve discovery requests so that the rules allow for a response prior to the discovery deadline. The Court may deny as untimely all motions to compel filed after the discovery deadline." Extended once, the discovery deadline is June 15, 2012. (Doc. 124)
>
> Under Rule 34(b)(2)(A), Federal Rules of Civil Procedure, a party must respond to a discovery request within thirty days. Violating Judge Honeywell's order, Alexander requested the legal invoices and legal bills on June 4, 2012, and left Leon Kaplan eleven days to respond before the discovery deadline. Complying with Rule 34, Leon responded with objections on July 3rd, and Alexander submitted the motion to compel on July 13th—nearly a month after the discovery deadline and, again, in violation of Judge Honeywell's order. The motion to compel (Doc. 140) is delinquent and **DENIED.**

On August 21, 2012, Alexander moved (Doc. 156) for reconsideration and argued indignantly:

> ■ After six years, the state Probate Court finally ordered Defendant to submit an Interim [Accounting] ... Upon reviewing the Interim Accounting, many more questions were raised than answered as to the legitimacy and propriety of many payments made by both the Defendant and his attorney.
>
> ■ It is certainly admitted that this Court previously set a discovery cutoff date of June 15, 2012; however, the production of the Accounting in the estate immediately called for the discovery requested. As a result, Plaintiff served a Request to Produce ... on June 4, 2012.
>
> ■ There are also known expenses of this litigation which were not mentioned in the [probate] Accounting. Because he is being sued personally here, he had no right or authority to pay for his expenses with estate funds without leave of the State Court.
>
> ■ In 2008, Plaintiff sought this information in the Estate and at the time was denied because there was ongoing litigation back and forth between Plaintiff and Defendant. The Court denied discovery at that time because (as it stated) the billings might give trial tactics and plans away to Plaintiff.... At this time there are no "tactics and plans" to be given away by exposing the billings to the light of day.
>
> ■ As to being "delinquent," this Court is respectfully reminded that the notice was served 11 days prior to the expiration of discovery because that is when the Accounting was produced.

(Doc. 156) As Alexander persuasively demonstrates, the estate remains open, the administration remains active, and the probate accounting (both interim and final) remains incomplete and unreviewed by the probate court. Alexander admits that his federal court discovery request was delinquent, but Alexander argues "many more questions were raised than answered [in the probate court] as to the propriety of many payments." Alexander identifies no moment when the probate's "raising of questions" will stop but, instead, implies that federal court deadlines (intended to promote an orderly disposition of Alexander's federal action) must yield each time

relevant activity occurs in the probate administration.

The probate court has apparently already resolved at least one claim raised in the federal action. Acting as personal representative, Leon retained Cathy Reiman as counsel for Mack's estate, and the pair negotiated a settlement of a wrongful death action against Mack's nursing home. On November 26, 2007, Leon petitioned the probate court for approval of the settlement. On January 31, 2008, the probate court held a hearing in which Alexander appeared and objected to the amount of the settlement. Unpersuaded by the objection, the probate court in a final and appealable order granted the petition and approved the settlement (Doc. 123–5). *See Brunson v. McKay*, 905 So.2d 1058, 1061 (Fla. 2d DCA 2005) (hearing an appeal of a probate court's order approving the amount of a wrongful death settlement).

In this action, Alexander alleges in Count I that Leon "breached his fiduciary duty by negligently handling the litigation against the [nursing home] and settling the case for a ridiculously low amount." (Doc. 43, ¶ 27) Section 733.612(24), Florida Statutes, grants a personal representative the authority without court approval to "[s]atisfy and settle claims," including a claim for wrongful death. However, a personal representative may petition for probate court approval, the granting of which absolves the personal representative of personal liability for the settlement:

> When a proposal is made to compromise any claim, whether in suit or not, by or against the estate of a decedent or to compromise any question concerning the distribution of a decedent's estate, the court may enter an order authorizing the compromise if satisfied that the compromise will be for the best interest of the interested persons. The order shall relieve the personal representative of liability or responsibility for the compromise.

Fla. Stat. § 733.708; *Evans v. Tucker*, 101 Fla. 688, 135 So. 305, 309 (1931);[6] *Carlton v. Carlton*, 578 So.2d 820, 823 n. 4 (Fla. 2d DCA 1991) (citing *Security Ins. Co. v. Stillson*, 397 So.2d 1206 (Fla. 1st DCA 1981) ("The personal representative may thus avoid liability for a compromise by obtaining the statutory order of authorization.")). Other examples of resolved claims probably appear elsewhere in the probate court's massive record, which spans six years, contains more than 1,020 docket entries, and continues to grow.[7]

---

6. The August 3, 2011, order (Doc. 56) misreads *Evans* and finds that probate court approval under Section 733.708 fails to absolve a personal representative of personal liability. The August 3 order quotes a section of *Evans* that discusses Florida common law. Immediately below the quoted section, *Evans* discusses "[Section] 5613, Compiled General Laws of Florida 1927," a predecessor to Section 733.708, Florida Statutes:

   > [U]pon order of the court a compromise or settlement of any claim by or against an estate may be made upon petition of the executor setting forth the facts as to such claim, verified by oath, when the court is satisfied that it is for the best interests of the estate of the decedent, such statute shall operate to relieve the executor of all personal liability for making such compromise.

   > The provisions of this statute should be complied with; otherwise an executor may be subjected to personal liability for any injury to the estate in case of waste, mistake, or bad faith.

   135 So. at 309. *Evans* is supported by both a plain reading of Section 733.708 and a policy promoting the service of an attentive and qualified personal representative.

7. Leon's motion to dismiss cites other allegations purportedly resolved in the probate court:

   ■ Alexander also previously objected to the Estate reimbursing Leon for guardianship expenses. But this was authorized by the probate court and later approved of by a court-appointed guardian ad litem.

Through seven state actions, seven state appeals, and the federal action, Alexander has contested pervasively Leon's actions as administrator of Mack's estate. Regardless of the outcome in federal court, Leon's continued service as administrator offers the grim prospect of Alexander's filing further actions (in federal court, state court, or both) for alleged wrongs accruing before the estate is closed. Finally, continued prosecution of this action rewards and invites forum shopping by permitting Alexander to race to the federal court before the probate court can grant immunity through discharge.[8] Of course, each consequence of continued federal litigation remains contingent, but one point stands certain—if the probate remains open when the federal action concludes, substantial and troublesome piecemeal litigation results.

A stay in favor of the probate administration permits the probate court to fulfill its established and salutary role and to resolve the probate issues without federal obstruction, permits Leon's disclosure of contested estate expenses to the probate court, preserves Leon's statutory right to a discharge determination in the probate court, halts Alexander's premature and partially redundant litigation in federal court, and likely in due course concludes the federal action when the probate court (the primary and preferred forum for probate matters) decides whether to discharge Leon as personal representative. The federal action must await respectfully the state probate court's administration of Mack's estate.

## CONCLUSION

Containing a comprehensive set of rules, a heightened standard of personal representative liability, and an array of procedures for personal representative exoneration, the Florida Probate Code intends to protect the personal representative from exhausting and expensive collateral litigation, to promote the service of an attentive and qualified personal representative, and ultimately to sustain the resources of the estate through an orderly administration of probate. Further prosecution of this antagonistic federal action will oppress the personal representative, obstruct the administration of Mack's estate, pre-empt the comprehensive Florida Probate Code, ignore comity between state and federal courts, and squander state and federal judicial resources.

This action is **STAYED** until entry in state court of a final judgment (and disposition of any matter suspending rendition under Rule 9.020(h), Florida Rules of Appellate Procedure) in the probate of Mack's estate. *Moorer v. Demopolis Wa-*

---

■ Alexander claims that Leon wrongfully abandoned valuable personal property previously owned by the decedent. This may be a "new" claim, though Alexander certainly could have raised it when he raised the other claims in the probate proceeding. For example, in Exhibit 5, page 4, Alexander alludes to this possible claim when he asserts that Leon "has evidenced a marked lack of regard for the property and assets of the estate."

■ Alexander has also previously argued that Leon failed to pay certain pharmacy bills and failed to timely pay for funeral expenses within the time permitted by religious law. The probate court also dismissed these claims.

■ Alexander has also previously complained about Leon's use of his attorney[s] for tax and audit purposes, rather than using H & R Block as Alexander argues. This too was dismissed by the probate court.

(Doc. 46 at 7) (citations omitted)

**8.** *See FDIC v. Nichols,* 885 F.2d 633 (9th Cir.1989) (recognizing " 'forum shopping' ... as one among numerous factors relevant to determining whether to defer [to the state action]").

*terworks & Sewer Bd.*, 374 F.3d 994, 998 (11th Cir.2004) ("A stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine.") (internal quotation omitted). Alexander may file a notice within fourteen days of entry of a final judgment (and disposition of any matter suspending rendition under Rule 9.020(h), Florida Rules of Appellate Procedure). Leon may respond within fourteen days. The clerk is directed to administratively close the case.

### ORDER

An October 30, 2012, order (Doc. 184) stays this action until entry in state court of a final judgment in the probate of Mack Kaplan's estate. Alexander moves (Doc. 186) for reconsideration.

Alexander implicitly argues among other points that a previous order established the "law of the case." In Alexander's words, "this Court [cannot] sit as an appellate court to overturn prior decisions [ (Order Denying Leon's Motion to Dismiss, Doc. 56) in the same action] of another Federal District Court Judge of equal stature and authority." However, the law is quite to the contrary. Fed.R.Civ.P. 54(b) (noting that an order resolving fewer than all of the claims "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."); *Gregg v. United States Indus.*, 715 F.2d 1522, 1530 (11th Cir.1983) ("[The district judge] was not bound to give absolute effect to the first judge's rulings, and he did not do so.... [A]s an alternative, he carefully exercised

his own power and duty of independent decision."); Wright & Miller, *Federal Practice & Procedure* § 4478.1 (2d ed. 2012) (detailing the policy supporting "a successor judge['s] ... free[dom] to attempt the best possible disposition of the case"). The October 30 order explains in detail the necessity of imposing a stay and departing from the August 3, 2011, order refusing to abstain.

Next, Alexander cites *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666 (11th Cir. 1991), *abrogated in part, Saxton v. ACF Industries*, 254 F.3d 959 (11th Cir.2001), and argues (Doc. 186 at 6) that the "probate exception" permits Alexander's federal action for personal liability against Leon. The October 30 order agrees but temporarily abstains under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and Alexander again confuses abstention and a stay with the "probate exception" and a dismissal.

Involving simultaneous state and federal actions, *Glickstein* included three wills of Lilly Glickstein, the third of which the state court admitted to probate. The third will permitted Robert Grayson and Peggy Bonomo to inherit equal shares of the estate's remainder and appointed the two as beneficiaries of a marital trust established by Lilly's late husband. Sun Bank was appointed as the personal representative of the estate.

Howard Glickstein successfully challenged the third will in the probate court, which set aside the third will in favor of the first will. The will challenge was appealed, but before the decision was affirmed on appeal, Howard sued in federal court "on behalf of himself and the estate of Lilly Glickstein" for "wrongful interference with an inheritance." While the will challenge awaited resolution in the Florida courts, the district court dismissed the fed-

eral action. According to the district court (1), because Howard was not the estate's personal representative, Howard lacked "standing" to pursue the action on behalf of the estate and (2), because Howard "had failed to 'demonstrate' that the case could not be heard by the probate courts," Howard failed to "exhaust" his probate remedy. After the district court's dismissal but before the Eleventh Circuit's opinion, the will challenge was affirmed in the Florida appellate court.

In the Eleventh Circuit, Howard argued that dismissal was proper under both the probate exception and abstention. *Glickstein* rejected the probate exception argument, and in the final paragraph before the conclusion, summarily rejected the abstention argument:

> Finally, the defendants argue that abstention is appropriate in this case as the issues are pending in the state courts and the state courts are more familiar with them. The fact that a similar action is pending in a state court does not mean that the federal court should abstain from deciding the case. *See Jett v. Zink,* 474 F.2d 149 (5th Cir.) (even if state law is unclear, it is clear that both cases can be heard simultaneously in state and federal court), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 104 (1973). The defendants note that it is proper for the federal court to decline jurisdiction when the state courts are already familiar with the matters. *See Rice v. Rice Found.,* 610 F.2d 471 (7th Cir.1979). While the probate court that invalidated the first will is more familiar with the facts of this case than the district court, these issues are not pending before the probate court.

922 F.2d at 674.

In the federal action, Howard sought (1) attorneys' fees and expenses to compen-

sate for challenging the third will and (2) "overturn [of] certain inter vivos transfers made to the defendants" named in the federal action. Perforce the probate court's setting aside the third will, the defendants in the federal action were removed as trustee and personal representative before the commencement of the federal action. In other words, Howard sought in the federal action no damages for wrongs committed by a personal representative serving during the prosecution of the federal action, that is, no *Glickstein* defendant remained as personal representative during the on-going probate of the estate, and no *Glickstein* defendant awaited discharge in the probate court. Thus, *Glickstein* presented little possibility of piecemeal litigation from a federal court's disposition on the merits, little possibility that a ruling in federal court would disrupt the proceedings in state court, and little possibility that a ruling in state court would disrupt the proceedings in federal court.

By contrast, Leon remains personal representative of the on-going probate of Mack's estate, and Leon awaits discharge (or imposition of liability) by the probate court. As explained thoroughly in the October 30 order, (1) disposition of Alexander's federal action results in "substantial and troublesome" piecemeal litigation; (2) a ruling in federal court disrupts the proceedings in state court, robs Leon of his statutory right to a discharge determination in the probate court, and preempts the probate court's statutory duty to decide discharge; and (3) each event in the probate court (such as an interim accounting, *See* Doc. 184 at 12–14) disrupts the proceedings in the federal action.

*Glickstein* recognizes that Howard's appointment as personal representative awaited the conclusion of the appeal in the state court and consequently that Howard

lacked the capacity to sue on behalf of the estate. Rather than suggesting that the district court ignore the practical consequence of a simultaneous state court action and charge stubbornly forward to a hasty and unjust disposition, *Glickstein* endorses a stay:

> [Howard], however, was not the personal representative at the time the suit was brought. Nevertheless, as his pleadings and responses make abundantly clear, his appointment would be assured once the judgment of the probate court overturning the second and third wills became final. Under these circumstances, the district court erred in dismissing the case with prejudice.
>
> Given the lack of finality surrounding the case, the better course of action would have been to stay the proceedings to await the state court action.

922 F.2d at 671. The motion (Doc. 186) is **DENIED.**