IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 25, 2022 Session

## DENNIS OWEN v. KENNETH A. GRINSPUN ET AL.

**Appeal from the Circuit Court for Putnam County**
**No. 20CV243      Jonathan L. Young, Judge**
_____

## No. M2021-00681-COA-R3-CV
_____

Appellant appeals the trial court's dismissal of this cause of action on the basis that it was filed by a deceased plaintiff and therefore a nullity that could not be corrected via amendment. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

William B. Walk and Carl I. Jacobson, Memphis, Tennessee, for the appellant, Dennis Owen.

Daniel H. Rader IV, Daniel H. Rader, III, and Lane Moore, Cookville, Tennessee, for the appellees, Kenneth A. Grinspun, Upper Cumberland Orthopedic Surgery, P.C.,

Minton P. Mayer and Whitney Horak, Memphis, Tennessee, for the appellee, Integrity Healthcare of Celina, LLC, d/b/a Celina Health and Rehabilitation Center.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

On July 30, 2019, and August 6, 2019, Plaintiff Alice Owen underwent surgeries performed by Defendant/Appellee Kenneth Grinspun. On November 25, 2020, after having given pre-suit notice,[1] Mrs. Owen, by and through counsel, filed a suit for personal injuries related to the surgeries against Dr. Grinspun, Upper Cumberland Orthopedic Surgery, P.C.

---

[1] *See generally* Tenn. Code Ann. § 29-26-121.

("Upper Cumberland"), and Integrity Healthcare of Celina, LLC ("Integrity Healthcare," and together with Dr. Grinspun and Upper Cumberland, "Appellees"). Unbeknownst to counsel, however, at the time the complaint was filed, Mrs. Owen had passed away from causes unrelated to this cause of action;[2] her death occurred five days earlier on November 17, 2020. Discovery between the parties ensued, and Dr. Grinspun and Upper Cumberland filed an answer.

On February 26, 2021, Mrs. Owen, through counsel, filed a suggestion of her own death on the record. On the same day, Mrs. Owen's counsel filed a motion to substitute her husband Dennis Owen ("Appellant") as the plaintiff in the action. On March 10, 2021, the trial court entered an agreed order allowing the substitution.

The case proceeded. On March 22, 2021, Integrity filed a motion to compel arbitration. It filed an answer the same day. On April 8, 2021, Dr. Grinspun and Upper Cumberland filed a motion to dismiss and/or for summary judgment. Therein, Dr. Grinspun and Upper Cumberland asserted, inter alia, that the original complaint was a nullity that did not serve to toll the statute of limitations and that the statute of limitations had now expired. Integrity filed a similar motion on April 13, 2021. Eventually, on May 25, 2021, the trial court reluctantly[3] granted the motions:

> Based on these facts, which are not in dispute, based upon the decision of the Tennessee Court of Appeals in ***McCormick v. Illinois Central Railroad Company***, 2009 WL 1392575 (Tenn. Ct. App. 2009), cited with approval in ***Jones v. Martin***, 2020 WL 6821696 (Tenn. Ct. App. 2020), the filing of the Complaint was a nullity and the statute of limitations, therefore, expired on December 6, 2020. The Court further finds the nullity was not cured by the Agreed Order to Substitute Parties entered on March 8, 2021.

Appellant thereafter appealed to this Court.

## II. ISSUES PRESENTED

Appellant raises the following issues, which are taken from his brief:

1. Whether the trial court erred by finding that this action was barred by the statute of limitations.
2. Whether the trial court erred in failing to hold that Defendants had waived defense by consent to substitution of plaintiff.

---

[2] Mrs. Owen's death certificate listed the cause of her death as a pulmonary embolism.
[3] During its oral ruling, the trial court specifically invited this Court to "find some equity" to reach a different result.

3. Whether the trial court erred by not holding that the statute of limitations in this case should be equitably tolled.

### III. STANDARD OF REVIEW

The trial court did not specifically indicate whether it was treating Appellees' motions as motions to dismiss or motions for summary judgment. It does not appear from the record that the trial court considered any documents outside the pleadings. As such, we apply the standard of review applicable to motions to dismiss. The determination of whether the trial court erred in granting or denying a motion to dismiss for failure to state a claim upon which relief could be granted is a question of law. ***Doe v. Cath. Bishop for Diocese of Memphis***, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (citing ***Farris v. Todd***, No. E1999-01574-COA-R3-CV, 2000 WL 528408, at *2 (Tenn. Ct. App. May 3, 2000)). This Court reviews the trial court's ruling on a Rule 12.02(6) motion to dismiss de novo with no presumption of correctness. ***Id.*** (citing ***Stein v. Davidson Hotel Co.***, 945 S.W.2d 714, 716 (Tenn. 1997)). "'[W]e must construe the [plaintiff's] complaint liberally in favor of the plaintiff, taking all of the allegations of fact therein as true[,]'" ***Id.*** (quoting ***Randolph v. Dominion Bank of Middle Tenn.***, 826 S.W.2d 477, 478 (Tenn. Ct. App. 1991)), as "[a] motion to dismiss for failure to state a claim for which relief can be granted 'tests only the legal sufficiency of the complaint[.]'" ***Id.*** (quoting ***Stein***, 945 S.W.2d at 716 (Tenn. 1997)).

### IV. ANALYSIS

### A.

In this case, there is no dispute that Mrs. Owen was deceased when her complaint for personal injuries related to health care liability was filed. Appellant asserts, however, that when his motion for substitution was granted, the amended pleading naming him as the plaintiff related back to the filing of the original complaint. *See generally* Tenn. R. Civ. P. 15.03 (governing relation back of amendments). Under Appellant's theory, the complaint in this case was filed within the applicable statute of limitations. *See* Tenn. Code Ann. § 29-26-116(a) (providing a one-year statute of limitations for health care liability claims); Tenn. Code Ann. § 29-26-121 (providing a 120-day extension on the statute of limitations when notice is given as provided in the statute).

Appellees contend, however, that the filing of the complaint by Mrs. Owen following her death was a nullity. Because the original complaint was a nullity, it did not toll the statute of limitations. And there being nothing to amend, no pleading exists that any amended pleading substituting Appellant as plaintiff could relate back to for purposes of the statute of limitations. Because no valid complaint was filed within one-year and 120-days of the accrual of this cause of action, they assert that the claims against them must be dismissed.

Here, the trial court reluctantly ruled that the filing of the complaint was a nullity that could not be corrected via substitution, relying on ***McCormick v. Illinois Cent. R. Co.***, No. W2008-00902-COA-R9-CV, 2009 WL 1392575 (Tenn. Ct. App. May 19, 2009). In ***McCormick***, a complaint was filed in the sole name of Sam McCormick in June 2006. ***Id.*** at \*1. Mr. McCormick, however, had died in September 2005. The defendant railroad duly answered the complaint. In March 2007, a suggestion of death was filed on the record, along with a motion to substitute Mr. McCormick's wife as next of kin. Although the railroad filed a motion to dismiss, it was denied, and the wife was substituted as the plaintiff. The railroad then filed a motion to reconsider. The wife responded that any defenses related to lack of capacity were waived because they were not included in the railroad's answer. ***Id.*** The trial court eventually dismissed the suit on the basis that wife was not a proper party to substitute in a case against the railroad. ***Id.*** at \*2. Upon another motion to reconsider, the trial court changed its mind, allowing the wife to be substituted. An interlocutory appeal to this Court followed. ***Id.***

On appeal, the railroad argued that a deceased individual lacked capacity to sue and that the suit was a nullity. ***Id.*** at \*3. We ultimately agreed. In reaching this result, we noted that other courts had consistently held that a case filed by a deceased party was a nullity. ***Id.*** (citing ***Campbell v. Travelers Insurance***, No. 06–9068, 2008 WL 145048 (E.D. La. Jan.14, 2008) (applying Louisiana law to hold that another party could not be substituted for a deceased party unless the deceased was made a party prior to his or her death); ***Adelsberger v. United States***, 58 Fed. Cl. 616 (Fed. Cl. 2003) (dismissing a claim filed by a deceased person and denying a motion to substitute because "a party must have a legal existence as a prerequisite to having the capacity to sue or be sued"); ***Banakus v. United Aircraft Corp.***, 290 F. Supp. 259, 260 (S.D.N.Y.1968) (holding that a suit filed by a deceased person was a nullity); ***Levering v. Riverside Methodist Hospital***, 2 Ohio App. 3d 157, 441 N.E.2d 290, 290 (Ohio Ct. App. 1981) (holding that substitution is not proper where "there was no party plaintiff from the inception"); ***Chorney v. Callahan***, 135 F.Supp. 35, 36 (D.Mass. 1955) (deeming substitution ineffective where complaint was filed after defendant died, reasoning that there was no action in which new defendant could be substituted); ***Pasos v. E. S.S. Co.***, 9 F.R.D. 279, 280–82 (D. Del. 1949) (dismissing action where suit was filed after the plaintiff's death and the defendant filed his answer without knowledge of such death); ***Banks v. Employers' Liab. Assurance Corp.***, 4 F.R.D. 179, 180 (W.D. Mo. 1944) (finding that substitution of the deceased plaintiff by the deceased plaintiff's estate was improper as substitution did not occur until after the filing of the "void suit"); ***Mathews v. Cleveland***, 159 Ga.App. 616, 284 S.E.2d 634, 636 (Ga. Ct. App. 1981) (finding that affidavit of garnishment filed by deceased plaintiff was not an action, but a nullity, and because no action was commenced, substitution was improper); ***Reed v. Long***, 122 Ill.App.2d 295, 259 N.E.2d 411, 412 (Ill. App. Ct. 1970) (holding that "[a] dead person cannot be a party to a suit as such is a non-existent entity and the proceedings were

void Ab initio");[4] ***Brickley v. Neuling***, 256 Wis. 334, 41 N.W.2d 284, 285 (Wisc. 1950) (finding that the court did not have jurisdiction over a suit filed against a deceased defendant, stating that "[i]t is elementary that one deceased cannot be a party to an action. More accurately, it is fantastic to suggest that he can be").

The ***McCormick*** panel further noted that the plaintiff cited no cases in which courts outside our jurisdiction had allowed a case to continue where it was filed by a deceased party. Instead, he argued that substitution was proper under Rule 25.01 of the Tennessee Rules of Civil Procedure, which allows substitution of the proper party when a party dies;[5] Tennessee Code Annotated section 20-5-102, which provides that civil actions generally do not abate upon death,[6] and the saving statute, Tennessee Code Annotated section 28-1-105.[7] The plaintiff also cited a Tennessee case in which substitution was permitted. As the

---

[4] Although not cited by any party, we note that the holding in ***Reed*** was called into question by the Illinois Appellate Court in 1991. *See **Marcus v. Art Nissen & Son, Inc.***, 224 Ill. App. 3d 464, 470, 586 N.E.2d 694, 698 (1991). In ***Marcus***, a complaint was filed by a deceased individual and his wife for non-wrongful death personal injuries. After the defendants filed a motion to dismiss, the plaintiffs asked for leave to amend to substitute the wife as administrator of her husband's estate. The trial court nevertheless dismissed the complaint. On appeal, the defendants argued that the filing by a deceased person was a nullity, citing Reed and its progeny. But the Marcus court concluded that Reed did not consider a relevant statute allowing relation back of amended complaints in which a party has been substituted. And the court cited more recent Illinois Supreme Court precedent that appeared to set aside the nullity doctrine. ***Id.*** at 469 (citing *Vaughn v. Speaker* (1988), 126 Ill.2d 150, 127 Ill. Dec. 803, 533 N.E.2d 885, *cert. denied* (1989), 492 U.S. 907, 109 S. Ct. 3218, 106 L.Ed.2d 568 (relying on grounds other than the nullity doctrine even though that doctrine was relied upon by the intermediate appellate court). So the court held that "[t]o the extent that the cases cited by the defendants contain language indicating that a complaint filed in the name of a deceased plaintiff is a nullity for purposes of applying the relation back doctrine, we disagree with those cases." ***Id.*** We note that ***Marcus*** involved a situation wherein the deceased's spouse, who became administrator of his estate, was already a party to the original lawsuit. The same is not true here.

[5] Rule 25.01(1) provides in relevant part as follows: "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties."

[6] Section 20-5-102 states as follows:

No civil action commenced, whether founded on wrongs or contracts, except actions for wrongs affecting the character of the plaintiff, shall abate by the death of either party, but may be revived; nor shall any right of action arising hereafter based on the wrongful act or omission of another, except actions for wrongs affecting the character, be abated by the death of the party wronged; but the right of action shall pass in like manner as the right of action described in § 20-5-106.

[7] Section 28-1-105(a) provides in relevant part that

If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

Court pointed out, however, these authorities all involved a situation *"where suit ha[d] been commenced by the decedent while yet in life*[.]" **McCormick**, 2009 WL 1392575 at *6 (quoting **Stuber v. Louisville & N. R. Co.**, 113 Tenn. 305, 87 S.W. 411, 413 (Tenn. 1905)).

Based on these competing arguments, we held that the railroad's argument held greater persuasive weight:

> On appeal, "Mr. McCormick" states that "[a]lmost as long as Tennessee has been a state, it has maintained that actions *brought by a person who later dies* may be maintained by successors and do not abate." (emphasis added). We agree. However, this is not such a case. In the instant case, suit was not filed against Railroad until after Mr. McCormick's death. We are persuaded by the numerous decisions from other jurisdictions cited by Railroad, that because Mr. McCormick was deceased when the complaint was filed on his behalf, the suit was a nullity, and thus not amenable to substitution. We note that the authorities offered by "Mr. McCormick" do not create a contrary result. Instead, the statutes allowing substitution presuppose an action commenced by a decedent prior to his or her death. Likewise, in **Stuber**, which "Mr. McCormick" cited in support of his argument, the Court allowed the plaintiff's widow to be substituted for the deceased plaintiff; however, the plaintiff, himself, initiated the suit prior to his death. 87 S.W. at 413. The Court explicitly stated that substitution was allowed "where suit [w]as . . . commenced by the decedent while yet in life." **Id.** . . . We hold that under Tennessee law, the commencement of a suit in the name of a deceased individual amounts to a nullity, and that such nullity may not be avoided through substitution of parties.

**McCormick**, 2009 WL 1392575, at *7 (further holding that the railroad did not waive its defense by failing to raise it in an answer).

It is true that the **McCormick** decision is not controlling on this Court; instead it is merely persuasive. *See* Tenn. R. Sup. Ct. 4(G)(1). But the **McCormick** decision is over a decade old at this point without any attempt by the Tennessee Supreme Court to amend our civil rules to temper its harsh result. It is not too great an exaggeration to state that the rule has somewhat "stood the test of time, and received the sanction of ages." **Bigley v. Watson**, 98 Tenn. 353, 39 S.W. 525, 527 (1897) (citation omitted).[8] Moreover, at least once, this

---

[8] Tennessee law is not always slow to evolve to ameliorate perceived flaws in our rules. For example, in **White v. Johnson**, 522 S.W.3d 417 (Tenn. Ct. App. 2016), this Court noted that the Tennessee Rules of Civil and Appellate Procedure did not specifically authorize an immediate appeal of the denial of a motion to intervene. **Id.** at 421 n.1. We nevertheless exercised jurisdiction based on the authority under Rule 2 of the Tennessee Rules of Civil Procedure. **Id.** Less than two years later, both the Rules of Civil Procedure and the Rules of Appellate Procedure were amended to expressly provide for an immediate

Court has expressed some approval of the rule, noting that "[n]o question, such a filing [i.e., one in the name of a previously deceased party] would be a nullity under the *McCormick* decision." *Jones v. Martin*, No. W2019-02047-COA-R3-CV, 2020 WL 6821696, at *3 (Tenn. Ct. App. Nov. 20, 2020). As a result, the *McCormick* decision is highly persuasive and, like the trial court, it will take much to convince us to apply a different rule.

Appellant's attempt to convince us to depart from *McCormick* is essentially two-fold. On the one hand, Appellant contends that the modern trend is to move away from the nullity doctrine, as it is outdated and conflicts with the current rules of civil procedure. On the other hand, Appellant suggests that *McCormick* was incorrect from the start because it did not consider Tennessee Supreme Court precedent that purportedly mandates a contrary result.

In support of his first argument, Appellant cites *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370 (2d Cir. 2021). In *Fund Liquidation*, two investment funds filed a class action lawsuit against several banks. *Id.* at 375. At the time of the filing of the complaint, however, the investment funds had been dissolved and were not then in existence. The complaint was instead being prosecuted by a separate entity, Fund Liquidation, that had been assigned the investment funds' claims. The banks filed a motion to dismiss, which the trial court granted on the basis that the complaint was a legal nullity. *Id.*

On appeal, the United States Court of Appeals for the Second Circuit framed the issues as follows: "(i) whether the dissolved entities possessed Article III[9] standing when the case was initiated, and, if not, (ii) whether Fund Liquidation is nevertheless able to join the action through Rule 17." *Id.* In deciding the first question, the court first noted that the dissolved investment funds had "neither capacity to sue *nor* legal existence following their dissolution." *Id.* at 383. The dissolved funds therefore lacked standing to sue. *Id.* at 384.

But this was not the end of the inquiry for the Second Circuit. Instead, the court held that the lack of standing was not fatal "so long as a party with standing to prosecute the

---

appeal in this circumstance. *See Witt v. Witt*, No. E2017-00884-COA-R3-CV, 2018 WL 1505485, at *6 (Tenn. Ct. App. Mar. 27, 2018) (discussing the amendments, which were adopted by the Tennessee Supreme Court on January 8, 2018 and went into effect on July 1, 2018).

[9] Article III standing was defined as requiring the following elements:

> (i) the plaintiff must have suffered an injury in fact that is concrete and particularized as well as actual or imminent; (ii) there must be a causal connection between the injury and the conduct complained of; and (iii) it must be likely that the injury will be redressed by a favorable judicial decision.

*Id.* at 381 (quotation marks, citations, and ellipsis omitted).

specific claim in question exists at the time the pleading is filed." ***Id.*** at 386. In support of that view, the court first noted that the circuit had never adopted the nullity doctrine. ***Id.*** at 387 (noting that language in prior cases that offered "some support" for the doctrine was merely dicta). In reaching this result, the Second Circuit considered the evolution of pleading practice to be less restrictive, as well as the allowance under Rule 17(a) of the Federal Rules of Civil Procedure for the real party in interest to be substituted for the plaintiff in an action. *See* Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."). Importantly, the court noted that to hold that the filing was a nullity would be to conflict with "the directive" of Rule 17(a) that a case not be dismissed until time has passed for the real party in interest to be substituted. ***Fund Liquidation***, 991 F.3d at 388. So the court held that the failure was not in jurisdiction, but in the allegations of jurisdiction, which could be corrected. ***Id.*** at 388–89 ("When viewed this way, filing a complaint in the name of a deceased or non-existent nominal plaintiff is akin to an error in the complaint's *allegations* of jurisdiction. And it is well-understood that a plaintiff may cure defective jurisdictional allegations, unlike defective jurisdiction itself, through amended pleadings.").

Finally, the court considered the "thornier issue" of "whether a complaint filed in the name of a non-existent entity, on behalf of an unidentified real party in interest, meets the requirement that 'the party invoking jurisdiction ha[ve] the requisite stake in the outcome when the suit [i]s filed.'" ***Id.*** at 389 (quoting ***Davis v. FEC***, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008)). The court answered this question in the affirmative. First, it noted that in other contexts, federal courts ignore nominal plaintiffs in favor of the real party in interest. ***Id.*** (citing ***St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply***, 409 F.3d 73, 80–81 (2d Cir. 2005) (concerning diversity jurisdiction)). Moreover, the court concluded that the substituted party is the "functional equivalent" of the nominal party. The court also noted that in certain instances "subject matter jurisdiction can even be obtained after a case's initiation and given retroactive effect through procedural rules." ***Id.*** at 390 (citing cases). *But see id.* at 389 (citing ***Lujan v. Defs. of Wildlife***, 504 U.S. 555, 571 n.5, 112 S. Ct. 2130, 2142, 119 L. Ed. 2d 351 (1992) (explaining that "standing is to be determined as of the commencement of suit")). Finally, the Second Circuit rejected the argument that no "action" was initiated without a proper plaintiff, noting that commencement of an action is "something that exists independent of subject-matter jurisdiction." ***Id.*** at 391 (citing Fed. R. Civ. P. 3 (noting that a civil "action" is commenced by the filing of a complaint); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the *action*.") (emphasis added)). So the court held that the real party in interest could be substituted even where the party that initiated the suit lacked legal existence at commencement.

The court admitted, however, that this was a minority viewpoint. *See* ***id.*** ("Admittedly, this is not a view adopted by many courts. The far more common view is the so-called 'nullity doctrine' exemplified by ***Zurich Insurance Co. v. Logitrans, Inc.***, 297 F.3d 528 (6th Cir. 2002), which says that a case initiated in the name of a plaintiff that lacks standing is an incurable nullity."). But it concluded that under Article III, it was not required to adopt the harsher rule.

Appellees strongly dispute that ***Fund Liquidation*** provides any support for reversal in this case. For one, the particular question at issue in ***Fund Liquidation*** involved Article III standing, an issue peculiar to federal law and not at all at issue here. Under that framework, the Second Circuit held that "[b]ecause one elemental precondition for meeting the case-or-controversy requirement is a claimant with standing, it must be that the non-existence of the supposed claimant is a problem of constitutional magnitude[.]" ***Fund Liquidation***, 991 F.3d at 383 n.7 (citation omitted). No party to this case asserts that we are similarly dealing with any constitutional requirements.

Moreover, while the ***Fund Liquidation*** court stated its holding in a broad manner, Appellees assert that the situation presented in that case was quite different. In ***Fund Liquidation***, an entity whose legal existence had been dissolved assigned its right to prosecute its claim to another entity. ***Id.*** at 375. The wrong entity, however, was named as the plaintiff. Because there was no caselaw from the jurisdiction directly on point, the Second Circuit adopted a minority viewpoint that allowed the proper party to be substituted. Although we can speculate that the Second Circuit may come to the same conclusion in the situation of a complaint filed by a deceased person, the opinion simply does not address this situation. *Cf.* ***Owens v. Truckstops of Am.***, No. 01A-01-9305-CV-00208, 1994 WL 115878, at *11 (Tenn. Ct. App. Apr. 6, 1994), *aff'd as modified*, 915 S.W.2d 420 (Tenn. 1996) (Koch, J., concurring in part and dissenting in part) ("Judicial decisions are authority for the points actually decided."); ***Harrison v. Wilkerson***, 56 Tenn. App. 188, 194–95, 405 S.W.2d 649, 652 (1966) ("It is axiomatic that an opinion in a former case is authority only for the points actually decided and that general expressions in the opinion are to be taken and understood as made in connection with the case under consideration. Language which was not decisive in the former decision is not binding as a precedent."). And unlike in the Second Circuit, in Tennessee there is caselaw that expressly adopts the majority viewpoint. Moreover, regardless of how analogous it may be, ***Fund Liquidation*** is simply not binding on this Court. *See* ***Webb v. Nashville Area Habitat for Human., Inc.***, 346 S.W.3d 422, 430 (Tenn. 2011) (quoting ***Harris v. Chern***, 33 S.W.3d 741, 745 n. 2 (Tenn. 2000) (noting that while federal decisions may be persuasive, they "are non-binding even when the state and federal rules are identical")).

Still, Appellant's assert that the underpinning of ***Fund Liquidation***, Rule 17(a)'s real party in interest doctrine, is the same under Tennessee law. In particular, they cite Rule 17.01 of the Tennessee of Civil Procedure, which provides as follows:

> Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, bailee, trustee of an express trust, a party to whose rights another is subrogated, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought; and when a statute so provides an action for the use or benefit of another shall be brought in the name of this State. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification or commencement by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Based on this rule and others contained in the Tennessee Rules of Civil Procedure, this Court has explained that "'[a] plaintiff may usually amend, under the relation back provision . . . to substitute or add as plaintiff the real party in interest.'" ***Osborne Enterprises, Inc. v. City of Chattanooga***, 561 S.W.2d 160, 163 (Tenn. Ct. App. 1977) (quoting 35A C.J.S., Federal Civil Procedure, s 347, p. 531). And because Rule 17.01 is substantially similar to the federal Rule 17(a), cases citing the federal rule are persuasive as to how Rule 17.01 should be applied. *See **Chapman v. King***, 572 S.W.2d 925, 928 (Tenn. 1978) (noting that Rule 17.01 "is, for practical purposes, identical to Rule 17(a) of the Federal Rules of Civil Procedure, so that, we may gain enlightenment from the decisions of the Federal courts construing Rule 17(a)").

Appellant's citation of Rule 17.01 brings them around to their second argument: that Tennessee caselaw predating ***McCormick*** requires a different result. Specifically, they assert that cases decided under Rule 17.01 indicate that the real party in interest may be substituted for even a non-existent party. For example, in ***Chapman v. King***, 572 S.W.2d 925 (Tenn. 1978), the parents of a deceased pedestrian filed a wrongful death action on her behalf.[10] *Id.* at 926. The defendant filed a motion to dismiss on the basis that the deceased's husband, not her parents, was the proper plaintiff. The trial court agreed and dismissed the action. *Id.*

Our supreme court agreed that the complaint should not have been brought by the parents, but disagreed that dismissal was the proper remedy. Instead, the court held that Rule 17.01, coupled with the liberality exercised in wrongful death cases, compelled the contrary result. As the court explained, "the reason for this liberal policy in wrongful death

---

[10] The complaint designated the plaintiff as "Ann Vanderpool, Deceased, by next friend Mr. & Mrs. Robert Vanderpool, father and mother, etc." *Id.* The Tennessee Supreme Court held that the complaint was properly construed as a wrongful death action filed by the parents, as it did not appear to be disputed by either the parties or the trial court. *Id.*

cases has been the fact that the cause of action is not changed by the substitution of the proper party plaintiff for the improper plaintiff, . . . and that such a substitution does not prejudice the defendant who has had notice, from the beginning of the suit, of the nature of the cause of action and that it was being pressed against him." *Id.* at 928. Thus, while the court allowed the substitution in that case, it cautioned that substitution should not be allowed "in the name of fictitious parties in the hope that at a later time the attorney filing the action may discover the real parties to the action.'" *Id.* at 929 (quoting *Wright and Miller, Federal Practice and Procedure*, Vol. VI, Section 1555, page 704, at page 707).

The Court reached the same result in ***Goodloe v. Puckett***, 194 Tenn. 647, 254 S.W.2d 745 (Tenn. 1953). In ***Goodloe***, the plaintiff brought an action on certain promissory notes as the administratrix of her husband's estate. *Id.* at 648. At the time the claim was filed, however, the estate had been closed and the plaintiff discharged as administratrix. The defendant filed a motion to dismiss the action on this basis. *Id.* In response, the plaintiff filed a motion to amend her complaint to strike the reference to herself as administratrix. The trial court eventually granted the defendant's motion to dismiss. *Id.* at 648–49.

The Tennessee Supreme Court reversed. Although ***Goodloe*** pre-dated the Tennessee Rules of Civil Procedure, the court relied upon a statute with a similar rule providing that an action should not be dismissed, but may be amended "to have the proper parties before the court[.]" *Id.* at 745 (quoting Tenn. Code § 8619). As an initial matter, the Court held that the fact that the plaintiff had sued in her capacity as administratrix did "not in any way effect the liability of the defendant upon these notes." *Id.* at 746. Moreover, the change from the plaintiff as administratrix to individual owner "added no new party and made no change in the cause of action." Under either circumstance, the plaintiff was "the only real party in interest." As a result, the court held that the plaintiff's motion to amend the complaint to strike the reference to the estate should have been allowed. *Id.* Appellant asserts that ***Goodloe*** stands for the proposition that real parties in interest should be allowed to be substituted for even non-existent plaintiffs.

Rule 17.01 was not cited in ***McCormick***. Neither was ***Goodloe*** nor ***Chapman***. Appellant essentially contends that proper review of these authorities reveals that the logic in ***McCormick*** was flawed. We note, however, that at least one of the cases cited in the ***McCormick*** decision analyzes that jurisdiction's version of Rule 17. *See* ***Mathews***, 284 S.E.2d at 635 (citing a Georgia statute that contains nearly identical language to Rule 17.01, but rejecting the argument that this rule provides support for substitution for a deceased plaintiff); *see also* ***Campbell***, 2008 WL 145048, at *1 (citing Fed. R. Civ. P. 17); ***Adelsberger***, 58 Fed. Cl. at 619 (same); ***Banakus***, 290 F. Supp. 259, 260 (S.D.N.Y. 1968) (same).

Moreover, some courts have more recently rejected arguments that Rule 17 alters the nullity doctrine in this circumstance. For example, in ***Garlock Sealing Techs., LLC v. Pittman***, No. 2008-IA-01572-SCT, --- So.3d ---, 2010 WL 4009151, at *4 (Miss. Oct. 14,

2010),[11] the appellant argued that Rule 17(a) of the Mississippi Rules of Civil Procedure allowed her to be substituted as the plaintiff in a suit that was mistakenly filed in the name of a deceased plaintiff. In particular, the appellant cited a federal decision that allowed substitution of a deceased plaintiff's estate in a wrongful death action, ***Esposito v. United States***, 368 F.3d 1271 (10th Cir. 2004). ***Esposito*** involved a wrongful death action that was filed in the name of the deceased. ***Id.*** at 1272. Obviously, at the time it was filed, the named plaintiff had died. The federal district court dismissed the suit for lack of subject matter jurisdiction. ***Id.*** at 1272–73. On appeal, the United States Circuit Court for the Tenth Circuit considered whether the suit was a nullity or whether the deceased's wife could be substituted as the plaintiff. According to the Tenth Circuit, however, federal Rule 17(a) did not require that the plaintiff have the capacity to sue and that Rule 17(a) allowed for substitution. ***Id.*** at 1277–78.

A closely divided Mississippi Supreme Court ultimately came to a different conclusion than the one reached by the ***Esposito*** court. To begin, the Mississippi Supreme Court noted that Mississippi's version of Rule 17 was "the same as federal rule 17(a)," and therefore interpretations of the federal rule were persuasive authority. ***Garlock***, 2010 WL 4009151, at \*5. Moreover, the Mississippi high court characterized the decision in ***Esposito*** as "well-reasoned and tenable[.]" But the court held that "it is not the only plausible interpretation of Rule 17(a)" nor was it the interpretation "that best comports with [Mississippi] law." ***Id.*** Instead, the Mississippi Supreme Court concluded that the filing by a deceased plaintiff was still a nullity.

In reaching this result, the court explained,

> ¶ 25. ***Esposito*** correctly notes that nothing in Rule 17(a) requires that the original plaintiff have the capacity to sue. ***Id.*** at 1277. Yet capacity is not really the issue in a case like the one before us. "Capacity to sue" relates to a party's right to litigate. ***Glickstein v. Sun Bank/Miami, N.A.***, 922 F.2d 666, 670 (11th Cir. 1991), *abrogated on other grounds by* ***Saxton v. ACF Indus., Inc.***, 254 F.3d 959, 963 (11th Cir. 2001) (quoting 6A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1542, at 327 (2d ed. 1990)); ***Iowa Coal Mining Co., Inc. v. Monroe County***, 555 N.W.2d 418, 428 (Iowa 1996) (quoting 59 Am.Jur.2d *Parties* § 24, at 410 (1987)). It has reference to legal disability, such as infancy or mental incompetency. ***Iowa Coal***, 555 N.W.2d at 428 (quoting 59 Am.Jur.2d *Parties* § 24, at 410). Our

---

[11] It is unclear why ***Garlock*** remains unreported more than a decade after it was decided. More recently, the Mississippi Court of Appeals relied on Garlock to hold that a complaint was nullity that Rule 17 was unable to correct. *See* ***Nungesser Indus. LLC v. City of Jackson***, No. 2018-CA-00908-COA, 2019 WL 6711653, at \*4 (Miss. Ct. App. Dec. 10, 2019). Regardless, ***Garlock*** is no more than persuasive authority to us. *See* ***Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.***, 978 S.W.2d 91, 93 (Tenn. 1998).

concern, rather, is a distinct but closely related concept: legal existence. *See Iowa Coal*, 555 N.W.2d. at 428 (noting that capacity to sue is distinct but closely allied to legal existence) (quoting 59 Am.Jur.2d *Parties* § 24, at 410). Legal existence is a basic threshold; it serves as a prerequisite for having capacity to sue. *See Adelsberger*, 58 Fed.Cl. at 618 (citations omitted). Legal existence means, at a minimum, that the individual suing is alive.

¶ 26. Even conceding that Rule 17(a) does not speak to whether the original plaintiff must have capacity to sue, it necessarily presupposes that the plaintiff filing suit legally exists. The rule provides that "[e]very *action* shall be prosecuted in name of the real party in interest," and that "[n]o *action* shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection ... for substitution[ ] of the real party in interest. . . ." Miss. R. Civ. P. 17(a) (emphasis added). The rule thus takes for granted or presumes that a valid "action" exists. *See* Miss. R. Civ. P. 17(a); *Mathews*, 284 S.E.2d. at 635–36 (interpreting a statute similar to Rule 17(a) in like manner); *Gregory* [*v. DiCenzo*], 713 A.2d [772,] 773 [(R.I. 1998)] (construing Rule 17 of Rhode Island's Superior Court Rules of Civil Procedure in a similar fashion). But, as we have already discussed, no "action" exists where the original complaint is filed by a dead person. Such complaints are null and void from the outset. In short, without a live person initiating suit, there can be no action; and without an action, substitution cannot be had under Rule 17(a).

¶ 27. We find that Rule 17(a) does not allow [the widow] to be substituted as a party. Because the December 2002 complaint was a nullity, a valid action was never commenced. And where a valid action does not exist, Rule 17(a) does not apply.

*Garlock*, 2010 WL 4009151, at *5–6.[12] The same reasoning employed by the *Garlock* court—that a deceased plaintiff has no legal existence to initiate an action—has been employed by at least one other court under similar circumstances. *See In re Asbestos Prod. Liab. Litig. (No. VI)*, 311 F.R.D. 152, 155 (E.D. Pa. 2015) ("The Court finds that these suits are nullities ab initio due to the deceased Plaintiffs' lack of legal existence, thus, Rule 17 never becomes relevant.").

Like the Mississippi Supreme Court, we must conclude that the continued application of the nullity doctrine in this context best comports with Tennessee law. As an

---

[12] The Mississippi Supreme Court came to this conclusion despite the fact that its procedural rules provide as follows: "Whenever it appears by suggestion that the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the *action* or transfer the action to the court of proper jurisdiction." Miss. R. Civ. P. 12(h)(3) (emphasis added); *see also* Miss. R. Civ. P. 3(a) ("A civil *action* is commenced by filing a complaint with the court.") (emphasis added).

initial matter, we note that many of the cases relied on by Appellant involve different contexts that what is presented here. Indeed, none of the appellate court opinions cited by Appellant in support of his position involve a personal injury complaint filed by a deceased plaintiff. *But see Marcus*, 586 N.E.2d at 698 (discussed in detail, *supra*).

Some instead involve wrongful death complaints. *See, e.g., Esposito*, 368 F.3d at 1272; *Chapman*, 572 S.W.2d at 926; *see also Foster v. St. Joseph Hosp.*, 158 S.W.3d 418 (Tenn. Ct. App. 2004); *Bell v. Nolan*, No. M2000-02684-COA-R3-CV, 2001 WL 1077956 (Tenn. Ct. App. Sept. 14, 2001); *Matthews v. Mitchell*, 705 S.W.2d 657 (Tenn. Ct. App. 1985). Of course, a defendant served with a complaint alleging that the plaintiff has died is on notice that the named plaintiff is not the individual prosecuting the claim by virtue of the very nature of a wrongful death action. Moreover, the Tennessee Supreme Court has stated that litigants should be given leeway to determine the proper plaintiff in a wrongful death action due to the confusion engendered by that situation. *Chapman*, 572 S.W.2d at 928. The same liberality has simply not been extended to personal injury complaints.[13]

Other cases involve complaints filed by parties who were not the real party in interest, but not complaints filed by deceased individuals. *See, e.g., Fund Liquidation*, 991 F.3d at 993; *Goodloe*, 254 S.W.2d at 745–46. Indeed, the vast majority of these cases do not involve a plaintiff that arguably lacks complete legal existence.[14] *See. e.g., Foster*, 158 S.W.3d at 419 (involving a claim filed by relative who had been granted power of attorney by the decedent, rather than next of kin); *Bell*, 2001 WL 1077956, at *1 (involving a complaint filed by the deceased parents rather than her surviving spouse); *Matthews*, 705 S.W.2d at 658 (involving two complaints filed by women who both claimed to be the deceased's widow); *Osborne*, 561 S.W.2d at 164 (finding that the trial court had not abused its discretion in allowing the plaintiff to amend its pleading to add a wholly owned subsidiary that owned the property at issue). As a result, the flaw in those cases rendered the complaints merely voidable. Indeed, in one of the above cases, the court noted that the defect was so slight that it had been cited "no caselaw from Tennessee indicating that [the original plaintiff] could not have prosecuted the claim to its conclusion absent an objection by the Defendants." *Foster*, 158 S.W.3d at 424. In contrast, there seems to be no dispute

---

[13] Another recent case involved a claim filed before an administrative medical review panel. *See Health & Hosp. Corp. of Marion Cnty. v. Dial*, 175 N.E.3d 310, 314 (Ind. Ct. App.), *transfer denied,* 178 N.E.3d 790 (Ind. 2021). The Indiana Supreme Court suggested that it may follow the nullity doctrine as to claims filed in its courts. *See id.* at 315 (citing Ind. T.R. 17(a); Ind. T.R. 25) ("The Trial Rules require a living plaintiff to file a complaint in state court. . . . If the plaintiff *subsequently* dies or becomes incompetent, then the plaintiff's successor in interest may be substituted for the plaintiff.") (emphasis added). But the court concluded that those rules were not applicable to a complaint filed before a medical review board.

[14] In *Goodloe*, the plaintiff filed the case as administratrix of her deceased husband's estate. *Goodloe*, 254 S.W.2d at 745–46. Arguably, because the estate was closed, the administratrix lacked legal existence. The *Goodloe* court, however, discussed this as an issue of capacity, rather than legal existence. Moreover, the Opinion does not address the nullity doctrine.

in this case that a case simply cannot be prosecuted by a deceased individual.[15] *See generally* Tenn. R. Civ. P. 25 (governing substitution of "proper parties" when a party dies).

Instead, the cases that most closely resemble the facts of this case have generally concluded that the filing was a nullity, often because the plaintiff's lack of legal existence rendered the complaint void. *See, e.g, **Mathews***, 284 S.E.2d at 635; ***Garlock***, 2010 WL 4009151, at *5–6; ***Gregory***, 713 A.2d at 773; ***McCormick***, 2009 WL 1392575, at *7. And even the Second Circuit noted that this was the majority viewpoint. *See **Fund Liquidation***, 991 F.3d at 388: *see also **In re Engle Cases***, No. 3:09-CV-10000-J-32, 2013 WL 8115442, at *2 (M.D. Fla. Jan. 22, 2013), *aff'd,* 767 F.3d 1082 (11th Cir. 2014)[16] (citing ***In re Aredia & Zometa Prods. Liab. Litig.**,* No. 3-06-MD-1760, 2012 WL 2015791, at * 1–2 (M.D. Tenn. June 5, 2012) (dismissing action filed by a deceased plaintiff); ***Mizukami v. Buras***, 419 F.2d 1319, 1320 (5th Cir. 1969); ***Banakus v. United Aircraft Corp.**,* 290 F.Supp. 259, 260 (S.D.N.Y. 1968) (same); ***Garlock**,* 2010 WL 4009151, at *3–4 (same); ***McCormick***, 2009 WL 1392575, at *1, 4 (same); ***Campbell v***, 2008 WL 145048, at *1 (same); ***Armes v. Thompson***, 222 S.W.3d 79, 85 (Tex. App. 2006) (same)); *see also* 67A C.J.S. Parties § 9 ("In every action, there must be a real plaintiff who is a person in law and is possessed of a legal entity or existence as a natural, artificial, or quasi-artificial person. A suit brought in the name of that which is not a legal entity is a mere nullity.").

Our conclusion is further buttressed by the fact that it comports with other Tennessee law recognizing that an illegal filing can constitute a nullity that does not properly invoke the court's jurisdiction. Indeed, it has long been the law in Tennessee that "[p]roceedings in a suit by a person not entitled to practice are a nullity." ***Bivins v. Hosp. Corp. of Am.***, 910 S.W.2d 441, 447 (Tenn. Ct. App. 1995) (citing 7 C.J.S. Attorney and Client § 31, p. 869, n. 13). The case of the ***Elm Children's Educ. Tr. v. Wells Fargo Bank, N.A.***, 468 S.W.3d 529 (Tenn. Ct. App. 2014), illustrates this point. In ***Elm***, a notice of appeal was purportedly filed on behalf of the plaintiff trust. ***Id.*** at 530. The notice, however, was signed only by the trustee, a non-attorney.[17] ***Id.*** The Court of Appeals therefore, sua sponte, raised the question of "whether the Notice of Appeal signed by the non-attorney trustee on behalf of the purportedly *pro se* Trust properly invoked the jurisdiction of this Court." ***Id.*** at 531. After concluding that the non-attorney trustee could not represent the separate entity of the trust, the court dismissed the action on the basis of lack of subject matter jurisdiction because "the Notice of Appeal in this case was not signed by an attorney,

---

[15] For example, during oral argument on Appellee's motion, counsel for Appellant explained as follows: "And so, our position is not that you can file a lawsuit on behalf of a dead person. You cannot, it's a nullity, they're absolutely correct about that." Counsel went on to argue, however, that Appellees waived their objection.

[16] The United States Court of Appeals affirmed the district's court's finding that the claims were not viable on different grounds. It specifically avoided consideration of "the nullity theory." 767 F.3d at 1108 n.30.

[17] The trustee had practiced as an attorney, but had been disbarred. ***Id.***

the Notice of Appeal was insufficient to initiate an appeal on behalf of the Trust." *Id.* at 533.

The same holds true for a complaint filed by a non-attorney purportedly on behalf of another. For example, in *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 554 (Tenn. Ct. App. 2015), the parents attempted to file a pro se complaint related to the personal injuries of their minor daughter. *Id.* at 549–50. The trial court dismissed the claims filed on behalf of the daughter as barred by the statute of repose. *Id.* at 550.

We affirmed the dismissal of the child's claims on a different basis: that the complaint filed by her pro se parents was a nullity. First, we concluded that while the parents could sue on behalf of their minor child, they could not file complaints on her behalf, as that constituted the unauthorized practice of law. *Id.* at 553. As a result, we concluded that the complaint filed on the child's behalf was void and a nullity. *Id.* at 554. As to the effect of that holding, the court explained:

> Something that is "void" has no legal effect. *See Black's Law Dictionary* 1349 (9th ed. 2010). Another legal dictionary defines "void" as "absolutely null," going on to describe an order that is "void ab initio" as "that which is void in the beginning, [which] cannot be cured by waiver, acquiescence or lapse of time." Bryan A. Garner, *A Modern Legal Dictionary* 920 (2d ed. 2005).

*Vandergriff*, 482 S.W.3d at 554. And "[b]ecause the complaint was void as to [the child's] claims, it was insufficient to commence an action on her behalf, and neither [the child] nor her claims were properly before the trial court." *Id.* In support of this holding, the court cited *Tate v. Ault*, 771 S.W.2d 416, 419 (Tenn. Ct. App. 1988), which held that a judgment is void if the court rendering it lacked jurisdiction over the subject matter or the parties.

Thus, *Elm* and *Vandergriff* confirm that a filing by a non-attorney that purports to represent another person or entity is not sufficient to vest the court with jurisdiction over the claim. The situation here is highly analogous: a complaint is filed by a plaintiff that has no legal existence, and therefore no right to do so. In other words, like a complaint involving the unauthorized practice of law, the complaint suffers from a fundamental illegality. In either situation, a complaint with no legal effect has been filed. And under these circumstances, the action is void and "cannot be cured." *Vandergriff*, 482 S.W.3d at 554.

Like the Mississippi Supreme Court, we agree that the cases that come to a different conclusion are well-reasoned and their conclusions defensible. But unlike the Second Circuit, this Court was not presented this issue on a fresh slate. More than a decade ago, this Court concluded that the nullity doctrine, a doctrine that courts today still recognize as the majority viewpoint, was most consistent with Tennessee law. After analyzing the law

on this issue, we must conclude that the *McCormick* court was correct to characterize this action as a nullity. And as a nullity, there is nothing to be amended. The substitution of Appellant as the plaintiff therefore cannot relate back.

**B.**

Appellees next assert that Appellees waived any objection to the substitution when they consented to Appellant being substituted as plaintiff. According to Appellant, *McCormick* itself confirms that a defense based on lack of capacity can be waived. *See McCormick*, 2009 WL 1392575, at *8 (citing Tenn. R. Civ. P. 12.08) ("Tennessee Rule of Civil Procedure 12.02 allows a party to raise incapacity as a defense either in its answer or in a pre-answer motion. Furthermore, Rule 12.08 provides that '[a] party waives all defenses . . . which the party does not present either by motion as hereinabove provided, or, if the party has made no motion, in the party's answer or reply, or any amendments thereto[.]'"). We respectfully disagree for a number of reasons.

First, we note that even the express language of *McCormick* belies Appellant's argument. Specifically, while *McCormick* does entertain the waiver of capacity argument of the plaintiff, it ultimately concludes that "we find that an objection based on the fact that the plaintiff was deceased when the complaint was filed *can be raised at any time during the proceedings*, in any appropriate manner[.]" *Id.* at *8 (emphasis added) (citations and internal quotation marks omitted). Moreover, since the decision in *McCormick*, Rule 12.08 was amended to state that a defense based on lack of capacity may be raised as late as "at the trial on the merits." Tenn. R. Civ. P. 12.08. Thus, even a lack of capacity defense is not waived by failing to raise it pre-trial.

Of course, we agree that Appellants here did more than simply fail to object, they acquiesced in the substitution of Appellant for Mrs. Owen. We must conclude, however, that even their consent to the substitution did not prevent them from raising this issue to the trial court. As previously discussed, a filing by a deceased plaintiff is more than just a lack of capacity, it is the omission of legal existence. This renders the complaint a nullity; in other words, it is void. And as we have previously discussed, something that is void cannot be cured by either acquiescence or waiver. *Vandergriff*, 482 S.W.3d at 554. And such a filing implicates subject matter jurisdiction, *Elm*, 468 S.W.3d at 533,[18] which cannot

---

[18] Although the *Vandergriff* decision does not explicitly state that it concerns an issue of subject matter jurisdiction, it does cite the *Tate* decision that indicates a judgment may be void for lack of subject matter jurisdiction or jurisdiction over the person. But the *Vandergriff* court raises the issue of the unauthorized practice of law sua sponte. *Vandergriff*, 482 S.W.3d at 554 n.7 ("Neither of the parties raised the issue of whether Catherine or her representatives were properly before the trial court."). Of course, questions of subject matter jurisdiction may be raised sua sponte. On the other hand, issues of personal jurisdiction may be waived. *See Turner v. Turner*, 473 S.W.3d 257, 282 n.18 (Tenn. 2015) ("[P]ersonal jurisdiction can be waived but subject matter jurisdiction cannot be waived or conferred by agreement."); *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996) ("Unlike subject

be waived or conferred by consent. *See **Dishmon v. Shelby State Cmty. Coll.***, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) ("A court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. It does not depend on the conduct or agreement of the parties, and thus the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver.") (citations omitted). So we must conclude that Appellees did not waive their objection to the void filing by acquiescing to the substitution of Appellant for Mrs. Owen.

**C.**

As a final matter, Appellant asserts that this Court should apply equitable tolling to save this case, citing cases from outside our jurisdiction. As Appellees point out, however, equitable tolling has never been recognized in Tennessee in civil cases. Indeed, the Tennessee Supreme Court has had numerous opportunities to adopt the doctrine, but has consistently declined to do so. ***Whitehead v. State***, 402 S.W.3d 615, 626 (Tenn. 2013) ("[W]e have consistently declined to recognize the doctrine of equitable tolling in civil proceedings."); ***Redwing v. Cath. Bishop for Diocese of Memphis***, 363 S.W.3d 436, 460 (Tenn. 2012) (noting that Tennessee has never adopted equitable tolling and making no effort to do so); ***Fahrner v. SW Mfg., Inc.***, 48 S.W.3d 141, 147 (Tenn. 2001) (rejecting an argument based on equitable tolling "[a]s a matter of logic and public policy"); ***Norton v. Everhart***, 895 S.W.2d 317, 321 (Tenn. 1995) (declining to adopt the doctrine because it is too broad). "As an intermediate appellate court, 'it is not our prerogative to set policy[.]'" ***Kim v. State***, 622 S.W.3d 753, 769 (Tenn. Ct. App. 2020) (quoting ***Vulcan Materials Co. v. Gamble Const. Co.***, 56 S.W.3d 571, 575 (Tenn. Ct. App. 2001). Because the Tennessee Supreme Court has chosen as a matter of policy not to adopt the doctrine of equitable tolling, we are bound by that decision. *See also **Brashears v. City of Knoxville Police Dep't***, No. 03A01-9809-CV-00298, 1999 WL 93582, at *5 (Tenn. Ct. App. Feb. 25, 1999) (declining to apply equitable tolling because the Tennessee Supreme Court has declined to recognize it).

**D.**

In sum, the trial court did not err in concluding that the November 25, 2020 complaint filed in this case was a nullity that could not be cured or waived. Appellant's substitution as plaintiff on March 10, 2021, therefore, does not relate back to the original commencement of the suit. Because no complaint was filed within the applicable statute of limitations and equitable tolling is not available to save the complaint, the trial court did not err in dismissing this case.

---

matter jurisdiction, [personal jurisdiction] may be waived by consent or by failure to object."). So it appears that the ***Vandergriff*** court too may have been concerned with subject matter jurisdiction.

- 18 -

## V. CONCLUSION

The judgment of the Putnam County Circuit Court is affirmed, and this matter is remanded for further proceedings as are necessary and consistent with this decision. Costs of this appeal are taxed to Appellant, Dennis Owen, for which execution may issue if necessary.

S/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE